## HOVER v. OKLAHOMA CITY et al.

No, 18652. Opinion Filed Oct. 16, 1928.

M. S. Singleton, for plaintiff in error.

M. W. McKenzie, Municipal Counselor, Bliss Kelly, Asst., and J. F. Martin, for defendants in error.

REID, C. The plaintiff in error, F. M. Hover, in behalf of himself and others not named, but alleged to be similarly situated, filed his petition in the district court of Oklahoma county, in which he sought to enjoin the city of Oklahoma City, together with its officers, from enforcing an ordinance of said city establishing, as plaintiff alleged, certain hours for him and his coplaintiffs to sell their products on a certain part of California street in said city.

A temporary injunction was granted, but when the cause came on for trial on the petition and answer, the temporary injunction was dissolved, and since injunctive relief was all that was asked by plaintiff, upon denial of that, he appealed to this court.

The evidence discloses that for several years that part of California street between Robinson and Harvey streets had been known as the "California Street Market" in the city, where the farmers and truck growers have been permitted by the city to sell their products. In the operation of this market there had been allotted by the city authorities for this purpose four feet of the sidewalk next to the street, room in the street for placing their trucks, and also room was allowed back of the trucks for parallel parking in the street for the convenience of customers, leaving the middle of the street for traffic. There are about 55 stalls located between Harvey and Robinson on California street for the use of the farmers and truckmen. and the holders of these places of business are selected from among all the parties desiring to do business there. Between Harvey and Robinson streets, on the north side of California street, there are many stalls next to the buildings extending four feet on the sidewalk, and in these stalls commission dealers or retail men are permitted to conduct their business, and which

business it is claimed by plaintiff is similar in its nature to that in which the plaintiff and his associates are engaged.

The evidence does not disclose the exact time the use of the street as a market place was first permitted by the city, but we first find an ordinance described as section 428, Compiled Ordinances of 1913, as follows:

"Section 428. California Market Place. The spaces of ground 20 feet wide on both sides of California avenue, in the city of Oklahoma City, next to the curb line, between Broadway and Robinson and between Robinson and Harvey, and such other spaces contiguous thereto as may be set aside from time to time by resolution of the board of commissioners, is hereby declared to be the California Market Place for the sale of fruits, vegetables, berries, fowls, eggs, butter, cheese, melons, provisions, and other articles commonly sold in public markets and necessary to the sustenance, comfort and convenience of the inhabitants of the city."

And next there is found one designated as ordinance 3028, passed on June 1, 1926, which, omitting the formal parts, is as follows:

"Section 1. That section No. 430 of the revised ordinances of the city of Oklahoma City, Okla., be, and the same is hereby amended so as to read as follows:

"Public market hours shall be between the hours of 5 o'clock a. m. and 9:30 o'clock p. m. on all days except Saturdays and Sundays, and on Saturdays shall close at 11:30 o'clock p. m. There shall be no public market on Sundays."

On the 21st day of June, 1927, the city passed and published ordinance 3201, the applicable part being as follows:

"Section 1. That section 430 of the revised ordinances of the city of Oklahoma City, of 1913, as amended by ordinance No. 3028, be amended to read as follows:

"Public market hours shall be between the hours of 5 a. m. and 2 p. m. on each day of the week except Sunday.

"Section 2. That section 435 shall be amended to read as follows:

"In addition to the space in the street, the persons permitted to occupy any market stand shall be allowed, during market hours, to occupy sufficient space on the sidewalk, not to exceed four (4) feet wide, next to the curb line, upon which may be placed during market hours benches.

"And it is hereby allowed that the stores facing California street, between Robinson and Harvey, on the north side of said street, shall be permitted a space of four (4) feet on the sidewalk in front of their buildings, on which may be placed benches for the display of food stuffs."

It will be seen that the ordinance contains no restriction as to hours of business against the parties mentioned in the foregoing paragraph, but, by the provisions of section 1, requires plaintiff and his associates to cease business at 2 p. m., and plaintiff therefore assails the ordinance as being discriminatory in character, in violation of section 2, article 2 of the Constitution of this state, as follows:

"All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry."

And section 1 of the Fourteenth Amendment of the Constitution of the United States, which reads:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

If plaintiff has a right to occupy this street for the purpose of conducting his business, he then has a right upon which he may stand irrespectively of whether some other person is or is not permitted to use such street to conduct a similar or different business. But let us see whether the plaintiff has such a right.

Section 4564, C. O. S. 1921, defines the power cities of this state have in the control of their streets, and the right to erect, regulate and establish market places by cities is derived from section 4565, C. O. S. 1921.

We find the general principle governing the question here presented in 18 R. C. L. 372, stated as follows:

"It seems to be the generally accepted view that a municipality has no authority, in the absence of express enactment by the Legislature, to establish or license markets or market stalls or stands in a public street, for the reason that the public is entitled to the free and unobstructed use of the street, and adjoining property owners are entitled to free and unobstructed ingress and egress to and from their property, and a municipality has no more right, in the absence of a legislative grant, to interfere with this use than any individual would have."

The case of Schopp et al. v. St. Louis, 117 Mo. 131, 22 S. W. 898, 20 L. R. A. 783, is

cited in the foregoing text as supporting the doctrine there announced. In that case the city had by ordinance set apart a portion of one of its streets as a market "for farmers and other wagons bringing produce to market for sale," and by ordinance gave the comptroller power to lease stands on and along that portion of the street to such vendors of produce. The plaintiff, the owner of property abutting on this street, which was leased to tenants conducting a business somewhat similar to the parties granted the privilege of the streets, brought a suit seeking by injunction to restrain the city from permitting its streets to be used in the manner we have stated. The situation in that case is peculiarly similar to the case under consideration. The court held that the use of the streets as permitted by the ordinance was unlawful because inconsistent with the rights of the plaintiff and with the rights of the public in the use of the street, and in the opinion said:

"The scheme and charter of the city of St. Louis gives to it, among others, the following powers: First, 'to establish market places and meat shops, and license, regulate, sell, lease, abolish or otherwise dispose of the same'; second, 'to designate the place where such articles shall be sold'; that is to say, 'meat, poultry, fish, and vegetables,' and third, 'to regulate the use of streets.' The powers conferred by the first and second of the above paragraphs are expressed in general words, and it cannot be said that they give the city any power to convert the public streets into market places. Says Dillon, 'But power to a municipal corporation to establish markets and build market houses will not give the authority to build on a public street. Such erections are nuisances though made by the corporation, because the street, and the entire street, is for the use of the whole people. They are nuisances when built upon the streets, although sufficient space be left for the passage of vehicles and persons.' Dill. Mun. Corp. (4th Ed.) sec. 383. And the text has the support of the following cases: Wartman v. Philadelphia, 33 Pa. 202-210; State v. Mobile, 5 Port. (Ala.) 279; State v. Laverack, 34 N. J. L. 201."

In the case of Hadfield et al. v. Lundin (Wash.) 168 Pac. 516, the court discussed the principle applicable to this case in the following language:

"The streets and highways belong to the public. They are built and maintained at public expense for the use of the general public in the ordinary and customary manner. The state, and the city as an arm of the state, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor except upon the terms and conditions prescribed by the state or municipality, as the case may be. The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege, and not as a matter of natural right. * * *

"In Wade v. Nunnelly, 19 Tex. Civ. App. 256, 262, 46 S. W. 668-672, the Texas Court of Civil Appeals said:

"'The ordinance in question does not undertake to prevent or interfere with the right of the appellees to purchase, sell, or otherwise deal in the products referred to upon their own premises; nor does it prohibit other persons from carrying such products and delivering them to appellees upon their premises. * * * But appellees have no vested right to make marts of the streets, alleys, and other public places; and to deny them the privilege of so doing is not to destroy or deteriorate any of their property rights.' * * *

"'The regulation here involved, even considered as a prohibition, does not contravene the Fourteenth Amendment of the federal Constitution.

"'It is settled that the Fourteenth Amendment does not create any right in a citizen to use the public property in defiance of the laws of the state.'"

In Rowe v. City of Cincinnati et al., 159 N. E. 364, the Ohio Supreme Court said:

"A permit granted by a municipality to an owner of real property abutting upon a public street to erect gasoline pumps in such public street constitutes a mere revocable license."

And the court held that a city ordinance was valid and operative against a party who, together with his predecessor in business, had operated a gasoline filling station for 17 years on a sidewalk of a public street in the city under a permit theretofore issued by the city, and that an ordinance requiring him to move said filling station was valid and enforceable and not in violation of the Fourteenth Amendment, nor of a section of the Constitution of that state.

In the case of Keyser v. City of Boise, 30 Idaho, 440, 165 Pac. 1121, L. R. A. 1917 F, 1004, the plaintiff sought to enjoin the city of Boise from removing a gasoline pump installed by appellant on a public street under a permit issued to him by the city. The Supreme Court of that state, in affirming the judgment of the lower court denying an injunction, said:

"The holder of a permit to install an obstruction in a public street or thoroughfare for private purposes acquires no property or contractual right by reason of the issuance to him of such permit, and, whenever the city authorities deem it necessary as a police regulation to vacate and revoke such permit, the holder thereof has no alternative, but must comply with the order of revocation. * * *

"The city is therefore without authority, in the absence of a legislative enactment expressly permitting it, to grant a private person or corporation a permit to erect or maintain a permanent obstruction in a public street or thoroughfare for a purely private purpose; we have no such statute in this state. It follows that any one obtaining a permit from the city, for the private use of a public street, as in this case, takes the same with notice that it is subject to revocation at the will of the city, and, indeed, in this view, it matters not whether the use is made in accordance with a permit or without one, the use is merely permissive in either event, and revocable at any time without notice. If the person making such private use of a street goes to expense, he does so at his own risk, and he will not be heard to complain that his property is being taken without due process of law."

A most exhaustive discussion of the question decisive of this case is found in Lacey v. City of Oskaloosa, 143 Iowa, 704, 121 N. W. 542, 31 L. R. A. (N. S.) 853, in which the court, among many other things here in point, said:

"The primary use or purpose for which streets are established is to afford the public a way of passage or travel, and, while the city is not under mandatory obligation to open up and improve streets by the removal of natural obstructions which render them impassable, whenever it does open and improve them, it must take care that these ways are not obstructed or incumbered by the unauthorized act of any person or persons. A 'street' is a public way from side to side and from end to end, and any private use thereof which in any degree detracts from, hinders, or prevents its free use as a public way to its full extent, is, within the meaning of the law, an obstruction or incumbrance. See Quinn v. Baage, 138 Iowa, 426, 114 N. W. 205, and cases there cited.

"The city has no power or authority to grant any individual or any number of individuals the right to permanently occupy any part of a street with any structure or device for their private use, convenience, or profit. It may vacate a street, but it cannot authorize its perversion to other or private uses so long as it remains a street.

"A grant or passive permission, however long continued, confers no right upon the beneficiary which may not be withdrawn. Eddy v. Granger, 19 R. I. 105, 28 L. R. A. 517, 31 Atl. 831."

It is unnecessary to further confirm this opinion by citing decisions from other states, when this court has recently announced the law governing the main question herein in the case of Palace Garage et al. v. Oklahoma City, 131 Okla. 122, 268 Pac. 240, as follows:

"Where certain individuals or firms have established, with the knowledge and consent of the city, certain obstructions upon the streets and parkings of the city prior to the passage of an ordinance prohibiting same, no vested rights were acquired therein by reason of the permissive use of the streets and parking in such manner."

In the case of Wood v. City of Chickasha, 125 Okla. 212, 257 Pac. 286, the plaintiff in his petition for injunction against an ordinance of the city, which, among other things, compelled him to remove a loading rack used by him and extending across the sidewalk adjacent to his building, alleged that diagonally across the street from his loading rack a wholesale grocery company maintained a loading rack across the sidewalk. Before the trial of the case the plaintiff removed his loading rack, but it appears that that issue was thus taken from the case; however, this court said:

"In order that there be no misunderstanding, we now say if the dock had not been removed after the enactment of the ordinance, under the facts and by reason of the following authority, we would not hold herein that the ordinance, by reason of the contention as to the dock or platform, was discriminatory, and therefore, void. The city of Chickasha had the power, and it was its duty, to keep its sidewalks clear of permanent obstructions."

It will be seen that, in the foregoing case, the court announced that well-known principle that a party called to answer for the violation of either a public statute or a private right will not be heard to say in defense that some other person is violating that statute or that right, and that the state or interested party has not invoked the law against such violation.

It is urged by plaintiff that the ordinance complained of is void for the reason that the council in enacting it did so for the purpose of benefiting those occupying stalls next to the buildings. The motive of the council in voting for the ordinance is immaterial, and cannot be considered for the purpose of determining the validity of the ordinance in question. Finkelstein v. City of Sapulpa, 106 Okla. 297, 234 Pac. 187

· If we had concluded, which we have not done, that the city had the right to permit its streets to be used as a market, the ordinance limiting the hours of the use of the street for such purposes does not deny plaintiff the equal protection of the law, in violation of the Fourteenth Amendment of the Constitution of the United States.

In the case of Barbier v. Connolly, 113 U. S. 25, 5 Sup. Ct. 357, 28 L. Ed. 923, the court said:

"Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a pub.ic purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." Hawkins v. Roberts, 122 Ala. 130, 27 So. 327; Tinsley v. Anderson, 171 U. S. 101, 18 Sup. Ct. 805, 43 L. Ed. 91; Walton v. Nevin, 128 U. S. 578, 9 Sup. Ct. 192, 32 L. Ed. 544; Hayes v. Missouri, 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578."

It will therefore be seen that before plaintiff can successfully claim that this law works a discrimination against him in favor of the parties occupying the stalls next to the stores, he and they must be similarly situated. Plaintiff and his associates occupy four feet of the sidewalk next to the curb, room enough to park their trucks in the street, and have the further privilege that their customers may park their cars back of the trucks. This occupancy of the sidewalk by plaintiff is not similar to the occupancy of those who use only four feet of the sidewalk next to the buildings. The question as to whether the city has the power by ordinance to authorize the parties to conduct their business in the stalls on the sidewalk next to the buildings is not before the court.

The section of the Constitution of Oklahoma referred to in plaintiff's petition and brief has no application to the facts in this case, as the enforcement of this ordinance did not take from him the gains of his industry within the meaning of that constitutional provision.

Our conclusion upon the whole case is that the permission previously given by the city to the plaintiff and his associates to use the street as a market for their products was the grant of a license or privilege, and not the recognition of a right, and the city, having the right to revoke this privilege entirely, certainly had the right to restrict the privilege to shorter hours.

It follows that the judgment of the trial court denying the injunction should be affirmed.

TEEHEE, HERR, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.