## O. W. SHINN v. OKLAHOMA CITY.

No. A-9019. Sept. 5, 1936.
(61 Pac. [2d] 1126.)

434

438

440

Dudley, Hyde, Duvall & Dudley, for plaintiff in error.

Harlan Deupree, Municipal Counselor, and A. P. Van Meter, Ass't. Municipal Counselor, for defendant in error.

DOYLE, J. (after stating the facts as above). The contention of the defendant in this case is that this ordinance is unconstitutional, invalid, and void.

It is first argued that said ordinance embraces two distinct subjects, namely, loan brokers and money loaners, and is therefore invalid under section 6362, O. S. 1931, which provides in part as follows:

"Provided, further, that no ordinance shall contain more than one subject, which shall be clearly expressed in its title."

And under section 2, art. 5, of the Charter of the City of Oklahoma City, declaring that:

"Every ordinance of the Board of Commissioners shall embrace but one subject, which shall be clearly expressed in its title. * * * provided that if any subject be embraced in any ordinance contrary to the provisions of this section such ordinance shall be void only as to so much of the ordinance as may not be expressed in the title thereof."

The rule of law applicable to this contention is stated in 25 Ruling Case Law, § 88, page 842, as follows:

"The term 'subject' as used in these provisions is to be given a broad and extended meaning, so as to allow the Legislature full scope to include in one act all matters having a logical or natural connection. If all parts of an act relate directly or indirectly to the general subject of the act, it is not open to the objection of plurality. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. * * * Matters which constitute, apparently, two distinct and separate subjects are not so, in the meaning of the constitutional provision, unless they are incongruous and diverse to each other. While this provision is mandatory, yet it is to be construed liberally. It is not intended nor should it be so construed as to prevent the legislature from embracing in one act all matters properly connected with one general subject."

And in section 90, page 884, Id., it is said:

"The 'subject' of an act is the matter or thing forming the groundwork of the act, which may include many parts or things, so long as they are all germane to it and are such that if traced back they will lead the mind to the subject as the generic head. There can be no surer test of compliance with the constitutional requirement of singleness of subject than that none of the provisions of an act can be read as relating or germane to any other subject than the one named in the title. An act is not unconstitutional because more than one object

is contained therein where the objects are germane to the main subject, or they relate directly or indirectly to the main subject, and have a mutual connection with and are not foreign to the subject of such act, or when the provisions of the act are of the same nature and come legitimately under one subject."

In the case of Smith v. State, 47 Okla. Cr. 184, 287 Pac. 835, it is said:

"The purpose of the Constitution, declaring that every act shall embrace but one subject, which shall be expressed in its title, was not to hamper legislation but to check and prevent deception therein."

In State v. Coyle, 7 Okla. Cr. 50, 122 Pac. 243, this court said:

"Every legislative act is presumed to be constitutional, and the courts should not declare an act to be unconstitutional unless it is clearly so. If there is doubt, the expressed will of the Legislature should be sustained."

In the case of Bartlesville Elec. L. & P. Co. v. Bartlesville Interurban Ry. Co., 26 Okla. 453, 109 Pac. 228, 29 L. R. A. (N.S.) 77, the Supreme Court said:

"The requirement of a statute that the subject of any ordinance enacted by a city council shall be clearly expressed in the title is complied with where the title calls attention to the general subject of the legislation in the ordinance, and does not tend to mislead or deceive the people or council as to the purpose or effect of the legislation, or to conceal or obscure the same."

In the case of Ruth v. Oklahoma City, 143 Okla. 62, 287 Pac. 406, was involved the question whether the subject of the ordinance, namely, to vote bonds and to acquire a park with the money, was related so as to warrant both being included in the one ordinance, and the court held that the subjects were properly related and

the ordinance embraced but one general subject. The second paragraph of the syllabus holding:

"Title of ordinance calling attention to general subject of legislation, not tending to mislead, deceive, conceal, or obscure, is sufficient."

It is obvious that the title is sufficient. The evident purpose of the whole scope of the ordinance is the regulation of chattel mortgage and salary loans and the regulation of loan brokers dealing in such loans, and to enforce the enactment by proper penalties; and all this may be comprehensively said to be the subject of the ordinance. It follows that the ordinance does not embrace more than one subject, as that language has been and should be construed.

It is next insisted that under said ordinance the city attempts to exact a license tax for the purpose of regulation and to impose certain regulations upon the business of loan brokers and money lenders, whereas, the business of money lending is a legitimate one and not subject to the visitorial powers of regulation sought to be imposed.

Counsel in their brief say:

"Our contention in this regard is that the business of lending money is not one affecting the public health, morals or general welfare, or clothed with a public interest, either historically, or in view of its nature, so as to authorize the city to regulate it by an exercise of the police power; further that the regulation imposed is clearly unreasonable, arbitrary, capricious and oppressive, and bears no logical relation to the object of the legislation."

Oklahoma City is under a charter form of government, adopted under the authority and in pursuance of section 3 (a), art. 18 of the Constitution, and this ques-

tion must be determined upon a consideration of the powers granted under the constitutional provision, the statutes and under its charter.

In the case of In re Jones, 4 Okla. Cr. 74, 109 Pac. 570, 31 L. R. A. (N. S.) 548, 140 Am. St. Rep. 655, it is said:

"The powers of a municipal corporation are only those granted by express words; those fairly implied in, or incident to, the powers expressly granted; and those indispensable to the declared objects and purposes of the incorporation."

Under the constitutional provision (section 3 (a), art. 18) a city adopting a charter is accorded full power of local self-government and as such municipal corporation, under its charter it has power to enact, ordain, and enforce ordinances for the purpose of protecting the public peace, order, health, morals, and safety of the inhabitants, even though general statutes exist relating to the same subjects. In re Simmons, 4 Okla. Cr. 662, 112 Pac. 951.

Whatever power the Legislature possesses under the Constitution has been delegated to the municipality, and the question for consideration here is, not whether the court, in the exercise of a sound discretion, will hold the ordinance to be just, reasonable, or wise, but whether, resolving all doubts as to the exercise of legislative authority by its agent as would be done in favor of a statute enacted by the legislative consideration and control, which ordinance is unconstitutional, invalid, and void.

If there is any reasonable relation between the public health, safety, morals, or to the public welfare and the object of the ordinance, said ordinance must be upheld.

An act or ordinance is not arbitrary, oppressive, and unreasonable because it makes it a misdemeanor for a person to engage in a designated business or exercise a designated privilege without first taking out a license and paying a license tax.

The authority to levy and collect a license tax for the privilege of carrying on any business is found in section 6389, St. 1931, providing in part as follows:

"The city council shall have authority to levy and collect a license tax on * * * bankers, brokers, pawnbrokers."

Under the statute the city council or board of commissioners of a city operating under the charter form of government, have authority to provide a penalty for any failure to pay the tax provided for by ordinance.

McQuillin in his work on Municipal Corporations, vol. 3, p. 493, par. 1107, announces the rule:

"Imposition of a fine or other punishment for con ducting a business without first paying the license tax levied thereon is a proper method to compel payment."

In Ex parte Marler, 140 Okla. 194, 282 Pac. 353, 354, it is said:

"An ordinance providing a fine and imprisonment as a means of forcing a license tax does not trench upon the constitutional inhibition against imprisonment for debt as contained in section 13, article 2, Constitution of Oklahoma, providing: 'Imprisonment for debt is prohibited, except for the non-payment of fines and penalties imposed for the violation of law.'"

In the case of Grider v. City of Ardmore, 46 Okla. Cr. 33, 287 Pac. 776, 777, this court approved the rule stated in 37 Corpus Juris, p. 187, as follows:

"In the absence of positive evidence to the contrary, however, such acts or ordinances are presumed to be reasonable, and the courts will not interfere unless their unreasonableness and oppressiveness is clearly apparent, the burden of proving their unreasonableness or invalidity being on the one who asserts it, usually the licensee."

In Julian Oil & Royalties Co. v. Oklahoma City, 167 Okla. 384, 29 Pac. (2d) 952, the Supreme Court held as follows:

"If there is room for fair debate as to whether a municipal ordinance is arbitrary or unreasonable, the court will not substitute its own judgment for that of the legislative body charged with the primary duty and responsibility of determining the question."

And see Magnolia Petroleum Co. v. Wright, 124 Okla. 55, 254 Pac. 41; Beveridge v. Harper & Turner Oil Trust, 168 Okla. 609, 35 Pac. (2d) 435.

In the case of Gibbons v. Missouri, K. & T. Ry. Co., 142 Okla. 146, 285 Pac. 1040, 1043, it is said:

"Only in cases, however, where the Legislature exceeds its police powers, will the courts interfere or set up their judgment against that of the Legislature. State v. Mrozinski, 59 Minn. 465, 61 N. W. 560, 27 L. R. A. 76.

"As was said by Mr. Chief Justice Clarke, speaking for the United States Supreme Court in the case of Cusack Co. v. City of Chicago, 242 U. S. 526, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594, the courts will interfere with the legislative authority only when it is plain and palpable that the action of such authority has no real or substantial relation to the public health, safety, morals, or to the general welfare."

In City of Oil City v. Oil City Trust Co., 151 Pa. 454, 25 A. 124, it is said:

"What business or occupations so far affect the public welfare and good order as to require to be licensed,

is a matter of legislative consideration and control, which, when exercised in good faith, is outside of the jurisdiction of the courts."

In the case of Sanning v. City of Cincinnati, 81 Ohio St. 142, 90 N. E. 125, 25 L. R. A. (N. S.) 686, it is held:

"The state may, in the exercise of the police power, license and regulate chattel mortgage and salary loan brokers; and it may delegate authority to do so to municipal corporations."

In the opinion it is said:

"It is almost an axiom that anything which is reasonable and necessary to secure the peace, safety, morals, and best interests of the commonwealth may be done under the police power; and this implies that private rights exist subject to the public welfare."

And again:

" 'The general power of the Legislature to determine what is necessary for the protection of the public interests being clear, judicial inquiry is necessarily limited to determining whether a particular regulation is reasonable, impartial, and within the limitations of the Constitution. The Legislature is the judge of the mischief and the remedy, and of what shall be state policy, subject to the restrictions just mentioned.' The right to labor, to contract, to do business, or to engage in any of the common occupations of life is one of the inalienable rights of the citizen (Butchers' Union S. H. & L. S. L. Co. v. Crescent City L. S. L. & S. H. Co., 111 U. S. 746, Mr. Justice Bradley, 762, Mr. Justice Field, 756, 4 S. Ct. 652, 28 L. Ed. 585 [588, 590]), and may be regulated, therefore, by the state only, to promote the public welfare, and this brings us to the question: What possible public good can be subserved by regulating brokers in chattel mortgages and in salary loans, and, if the business is subject to regulation under the police power, are the provisions of the ordinance unreasonable?

"Usury laws are of ancient origin, and, while the utility of such legislation is still open to question, such laws are in force in this state, and in a majority of the states, and we think it too late to question the power of the state to enact them. One of the ways in which such laws are circumvented is by a commission to a broker. The class that obtains such loans comprises the most needy and improvident, and consequently the most susceptible to fraud and extortion, and surely legislation to prevent such evasions, or fraud and extortion, may rest upon the same grounds as usury laws."

In State ex rel. Ornstine v. Cary, 126 Wis. 135, 105 N. W. 792, 794, 11 L. R. A. (N. S.) 174 (writ of error dismissed in 204 U. S. 669, 27 S. Ct. 788, 51 L. Ed. 672), a statute limiting the amount of interest, and the sum to be charged for examination, views, fees, appraisals, commissions, renewals, and charges of every kind, that might be taken for money loaned upon chattel security, or secured by assignment of wages, and making a violation thereof a misdemeanor, punishable by fine or imprisonment, or both, was held to be a reasonable and valid exercise of the police power, and not an infringement of the right of personal freedom or liberty of contract guaranteed by the State Constitution.

In the opinion the court says:

"The making of such contracts and ensuring performance by pledge of personal property so readily and generally results in inflicting injuries on the borrower through unreasonable exactions that they are held as injurious to the community and as much against public policy as the unreasonable charges of interest. This injurious consequence affords a sufficient ground for the regulation by law, and is as proper for the protection of the borrower as a limitation on the rate of interest. We are of opinion that legislation restricting the infliction of such oppressive and unjust exactions is justifiable

as a reasonable and appropriate exercise of the police power."

Many other cases might be cited, but we do not consider it necessary. Our conclusion is that the ordinance is not unconstitutional, invalid, and void on the ground of being unreasonable, arbitrary, and oppressive.

Finally, it is contended that the ordinance is discriminatory in that it exempts national and state banks, trust companies, and building and loan associations, and for this reason denies equal protection of the law as required by the Fourteenth Amendment to the federal Constitution.

It is generally agreed that the licensing and regulation of any business which concerns and affects the public or general welfare of a state lie within the police power of the state, and that the Legislature of a state, in the exercise of such power, may make any reasonable classification which it deems necessary to the purpose intended to be attained by the legislation. State v. Hill, 168 La. 761, 123 So. 317, 69 A. L. R. 574.

In State v. Ware, 79 Or. 367, 154 Pac. 905, 906, 155 Pac. 364, a statute regulating the persons engaged in lending money, providing for license and exempting banks from its application, the Supreme Court of Oregon held does not violate the "privileges and immunities" clauses of the federal Constitution.

In the opinion the court says:

"It is a fact of common knowledge that in the larger cities and towns there are men whose business it is to prey upon the necessities of the improvident and the unfortunate by lending money at exorbitant rates of interest with the effect that in many instances the borrower becomes the bond slave of the lender, if, indeed, he possesses

enough character to prevent his desperation from driving him into overt acts of crime. These lendings and borrowings are usually so small in amount that the banking institutions make no pretense of engaging in the business, and hence arises the duty of the state to protect the unfortunate victim of rapacity so far as it is practicable. It requires no argument to establish the truth that this is a proper exercise of the police power." In re Home Discount Co. (D. C.) 147 F. 538; City Council of Augusta v. Clark & Co., 124 Ga. 254, 52 S. E. 881; Cowart v. Greenville, 67 S. C. 35, 45 S. E. 122; Wessell v. Timberlake, 95 Ohio St. 21, 116 N. E. 43, Ann. Cas. 1918B, 402; State v. Hurlburt, 82 Conn. 232, 72 A. 1079; Mutual Loan Co. v. Martell, 222 U. S. 225, 32 S. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913B, 529.

In Hover v. Oklahoma City, 133 Okla. 71, 271 Pac. 162, the Supreme Court held that:

"An ordinance of a city will not be declared void under the Fourteenth Amendment to 'the Constitution of the United States on the ground that it denies to a party the equal protection of the law, if within the sphere of its operation it affects alike all persons similarly situated."

It follows that said ordinance is not arbitrary in its classification and therefore not unconstitutional, invalid, and void as discriminatory class legislation.

From a consideration of the foregoing authorities, and for the reasons stated, we are of opinion that the ordinance under consideration in the case at bar must be justified and upheld as a proper exercise of the police power.

The judgment of the lower court is therefore affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.