Ex parte HOWARD LEE et al.

No. A-11140.   Feb. 23, 1949.

(203 P. 2d 720.)

Charles Hill Johns, of Oklahoma City, for petitioners.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

JONES, P. J. This is an original action in habeas corpus instituted by the petitioners, Howard Lee and Neal Parnell, to secure their liberty from the county jail of Garvin county, Oklahoma, where they were allegedly illegally restrained of their liberty by the sheriff of Garvin county.

The verified petition alleged that the petitioners are charged by information filed in the district court of Garvin county with an alleged crime of importing approximately 2,800 pints of alcoholic liquors into Oklahoma without a permit on May 9, 1947, and that they are now being illegally held in the county jail of Garvin county awaiting trial on said information.

It is further alleged that the information charges the accused with a violation of the so called "Liquor Permit Law", being chapter 16 of the Session Laws of Oklahoma of 1939, the same being sections 41 to 48, inclusive, of Title 37, Oklahoma Statutes 1941.

It is further alleged that said liquor permit law was specifically and expressly repealed by chapter 2 of Title 37, Session Laws of 1947, p. 296, § 22, the same being House Bill Number 254, which said law was passed and approved by the Governor with the emergency clause attached and therefore became effective upon the 24th day of April, 1947.

That by reason of the repeal of said liquor permit law, the district court of Garvin county does not have jurisdiction to entertain the prosecution of the petitioners under an information charging them with the offense of importing intoxicating liquors without a permit.

This cause was submitted upon an agreed statement of facts which recites:

"That on the — day of May, 1947, a Criminal Complaint was filed in the Justice Court of Garvin County, State of Oklahoma, before Ben Looney, Justice of the Peace, wherein it was alleged and charged that petitioners herein, defendants therein, did on or about the 9th day of May, 1947, unlawfully, knowingly, wilfully, intentionally, wrongfully and feloniously import into the State of Oklahoma and into Garvin County, from an unknown point in the State of Louisiana to a point on State Highway No. 19, the exact charging part of said Criminal Complaint being found in the copy thereof attached to petitioners Petition for Writ of Habeas Corpus as Exhibit 'A' thereto.

"That a warrant was issued pursuant to said Criminal Complaint and the petitioners were arrested and tried upon a preliminary trial in the Justice Court of Garvin County, State of Oklahoma, before Ben Looney and upon the 6th day of June, 1947, petitioners herein, defendants therein, were bound over to the District Court of Garvin County, State of Oklahoma, for trial in the District Court.

"That, thereafter, upon the 6th day of June, 1948, an information was filed in the District Court of Garvin County, State of Oklahoma, wherein the State of Oklahoma was plaintiff and petitioners herein were defendants, said Information charging petitioners in the same manner in which they were charged in the Criminal Complaint, a copy of which said Information is attached to petition for Writ of Habeas Corpus as Exhibit 'B' thereto.

"That petitioners herein are now awaiting trial in the District Court of Garvin County, Oklahoma.

"That this prosecution is instituted by the duly authorized representatives of the State of Oklahoma under Chapter 16 of the Session Laws of 1939, the same being Sections 41-48, both inclusive, Title 37 O.S. 1941."

The Attorney General in his brief agrees that there was an attempted repeal of the act upon which this prosecution was based by the provisions of House Bill Number 254, chapter 2, Title 37, Session Laws 1947, but alleges that said attempted repeal was void because it violated the provisions of section 57, article 5 of the Oklahoma Constitution which provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

The title to House Bill Number 254, which according to the petitoners repealed 37 O.S. 1941 §§ 41 to 48, inclusive (the liquor permit law) is as follows:

"AN ACT defining nonintoxicating and intoxicating beverages; defining certain general terms as used herein; levying a tax upon the manufacture or sale of such nonintoxicating beverages; requiring manufacturers within the State of Oklahoma to obtain a permit and pay a fee therefor; requiring manufacturers outside the State of Oklahoma to qualify with the Secretary of State to do business within the State of Oklahoma and thereaf-

ter to pay a license fee; providing for the apportionment of revenues accruing hereunder; prescribing and requiring that all persons, coming under the provisions of this Act shall pay a permit or license fee, prescribing the amount thereof; providing for reports and payment of fees required herein; requiring dealers to obtain a permit from the county judge; providing for an appeal to the district court, prescribing fees for ·permits and for the issuance, cancellation or revocation thereof; providing for rules and regulations for enforcement of this Act; requiring all dealers to comply with the provisions of this Act and the regulations; providing penalties for violation of the Act or such rules and regulations; authorizing necessary actions in the name of the State of Oklahoma for the enforcement of the Act; prescribing certain rules and regulations for trucks and other carriers engaged in the transportation of such beverages; prescribing and regulating use of labels and other markers in connection with the enforcement of this Act; enjoining enforcement duties upon county judge, county attorney, sheriff and other peace officers of the counties; providing for the effective date of this Act; making the provisions of the Act severable; repealing Chapter 2, Title 37, Oklahoma Statutes 1941, Chapter 2, Title 37, Session Laws 1945, *37 O.S. 1941* §§ *41, 42, 43, 44, 45, 46, 47 and 48,* and all laws or parts of laws in conflict herewith; and declaring an emergency." (Italics ours.)

It is the contention of the Attorney General that the bill as prepared and introduced in the House of Representatives dealt solely with alleged nonintoxicating beverages, to wit: beer, and that it was an act fixing a tax upon beer and providing for the regulation and enforcement of the beer law; that after it passed the House of Representatives as a licensing and regulatory measure, that part of the act repealing the liquor permit law was later inserted by a Senate Committee into the bill, and that it was passed by the Senate and later by the House of Representatives with the repeal provision

therein, which repeal provision was not called to the attention of the members of either house; that the insertion of said attempted repeal provision into House Bill Number 254 was unconstitutional for the reason that the attempted repeal of the act requiring a permit for the importation of alcoholic liquors dealt with a subject entirely foreign and not related to the subject of nonintoxicating beverages which was the main subject of House Bill Number 254.

The law seems to be well settled that in passing upon the constitutionality of a statute, the court will not go beyond the four corners of the bill and will not permit the impeachment of a statute by parol evidence or by the introduction of legislative journals to show that the act was not regularly passed.

In Goddard et al. v. Kirkpatrick et al., 193 Okla. 92, 141 P. 2d 292, it is stated:

"An enrolled bill duly filed in the office of the Secretary of State as the law provides imports absolute verity and the same cannot be impeached by the legislative journals. It is not competent to show by the journals that the Act was not regularly passed, but when such an Act is called in question the courts look to the enrolled bill only."

In the opinion it is stated:

"According to the expressed view in this jurisdiction, it is far better that a provision should occasionally find its way into the statute through mistake or even fraud, than that every Act should be at any and all times liable to be put in issue and impeached by the journals, 'loose papers of the Legislature, and parol evidence. Such a state of uncertainty in the statute laws of the land would lead to mischief absolutely intolerable.' "

The repeal provision is plainly set forth in the title to the statute as has been hereinabove shown. The stat-

ute is not attacked on the ground that the alleged repeal of the alcohol permit law was not named in the title, but the sole question presented is whether the statute in question contains more than one subject in violation of the constitutional provision, (sec. 57, art. 5, Okla. Const.)

The general rule followed by courts in determining the constitutionality of a statute claimed to violate the constitutional provision prohibiting statutes from containing more than one subject is set forth in 50 American Jurisprudence, section 195 as follows:

"The rule that every legislative act is presumed to be constitutional and every intendment must be indulged by the courts in favor of its validity, is applicable to statutes claimed to be unconstitutional as in violation of the provision prohibiting statutes from containing more than one subject or object. The courts will accord the statutes a liberal construction with the view of sustaining the legislative action. Indeed, the objection should be grave, and the conflict between the statute and the constitution substantial and plain or palpable, before the judiciary should disregard a legislative enactment upon the ground that it embraces more than one subject or object. Under these rules, where a court is still in doubt as to the constitutionality of the act, it should sustain the same. The principles herein set forth do not, however, prevent the court from strictly enforcing the constitutional provision under consideration in cases that fall within the reasons on which the provision rests."

In 50 Amercan Jurisprudence, section 197, it is further stated:

"To constitute plurality of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. Within the meaning of the constitutional provision, mat-

ters which apparently constitute distinct and separate subjects are not so where they are not incongruous and diverse to each other. Generally speaking, the courts are agreed that a statute may include every matter germane, referable, auxiliary, incidental, or subsidiary to, and not inconsistent with, or foreign to, the general subject or object of the act. The constitutional provision is not intended, nor should it be so construed as, to prevent the legislature from embracing in one act all matters properly connected with one general subject or object, but the term 'subject' or 'object' as used in these provisions is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters fairly, reasonably, naturally, logically, properly, or directly or indirectly connected with, or related to, each other or the same subject or object."

In the case of Shinn v. Oklahoma City, 59 Okla. Cr. 433, 61 P. 2d 1126, 1130, this court stated:

" 'The term "subject" as used in these provisions is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. If all parts of an act relate directly or indirectly to the general subject of the act, it is not open to the objection of plurality. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. * * * Matters which constitute, apparently, two distinct and separate subjects are not so, in the meaning of the constitutional provision, unless they are incongruous and diverse to each other. While this provision is mandatory, yet it is to be construed liberally. It is not intended nor should it be so construed as to prevent the legislature from embracing in one act all matters properly connected with one general subject.' "

In Smith v. State, 47 Okla. Cr. 184, 287 P. 835, this Court stated:

"The purpose of the Constitution, declaring that every act shall embrace but one subject, which shall be expressed in its title, was not to hamper legislation but to check and prevent deception therein. * * *

"Every legislative act is presumed to be constitutional and the courts should not declare an act to be unconstitutional unless it is clearly so. If there is a doubt, the express will of the Legislature should be sustained."

The act there in question prohibited the tapping of a pipeline and declared such act to be a felony, and also prohibited the taking of any crude oil, gas, or gasoline from a pipeline or receptacle from which same is being collected, and declared such act to be a misdemeanor.

This court, after quoting with approval from 25 R.C.L. section 88, as hereinabove quoted in Shinn v. Oklahoma City, supra, stated:

"The provisions, of the act under consideration in this case, are germane to each other and properly come under the subject of protection and theft of crude oil, gas, etc., while in storage and in pipe lines."

In Ruth v. Oklahoma City, 143 Okla. 62, 64, 287 P. 406, 408, our Supreme Court quoted with approval the language of 25 R.C.L. 847 as follows:

"The intention doubtless is to prevent embracing in an act having one ostensible object provisions having no relevancy to that object, but really designed to effectuate other and wholly different objects, and thus to conceal and disguise the real object proposed by the provisions of an act under a false or deceptive title."

In Griffin v. Thomas, 86 Okla. 70, 206 P. 604, 609, the court again quoted from 25 R.C.L. § 90, page 844, as follows:

"The 'subject' of an act is the matter or thing forming the groundwork of the act which may include many parts or things, so long as they are all germane to it

and are such that if traced back they will lead the mind to the subject as the generic head. There can be no surer test of compliance with the constitutional requirements of singleness of subject than that none of the provisions of an act can be read as relating or germane to any other subject than the one named in the title. An act is not unconstitutional because more than one object is contained therein where the objects are germane to the main subject, or they relate directly or indirectly to the main subject, and have a mutual connection with and are not foreign to the subject of such act or when the provisions of the act are of the same nature and come legitimately under one subject."

The constitutionality of the statute in question must be determined in accordance with the above fixed principles of law. The statute is one dealing with alcoholic liquors. It defines nonintoxicating beverages under the act as being alcoholic liquors containing more than one-half of one per cent of alcohol and not more than 3.2 per cent of alcohol by weight. Intoxicating beverages are defined to be alcoholic liquors in excess of 3.2 per cent of alcohol by weight. The statute requires permits from manufacturers, wholesalers, distributors and various kind of retailers, and charges a fee for the issuance of such permits for the manufacture, distribution and sale of alcoholic beverages containing less than 3.2 per cent of alcohol by weight.

Manufacturers of alcoholic beverages containing less than 3.2 per cent of alcohol by weight, located outside of the state, under the provisions of the act, are required to procure a permit from the Oklahoma Tax Commission before they are permitted to ship their manufactured products in the State of Oklahoma, which permit costs the sum of $500.00.

Wholesalers under the provision of the act must secure a permit from the Oklahoma Tax Commission and pay therefor the sum of $250. This provision applies alike to wholesalers doing business within the state and those located outside of the state who desire to ship their products to retailers within the state.

Under the provisions of the act there are four classes of retail dealers and each of them is required to secure a permit from the Oklahoma Tax Commission, the fee for the permit to be fixed according to the classification in which the retail dealer belongs.

The repealing clause of said act provides:

"Chapter 2, of Title 37, Oklahoma Statutes 1941, and Chapter 2 of Title 37, Session Laws 1945, and all laws in conflict herewith are hereby repealed subject to the conditions of enforcement of accrued rights as provided in Section 21 of this Act. 37 O.S. 1941 §§ 41, 42, 43, 44, 45, 46, 47 and 48, are hereby repealed."

Title 37 O.S. 1941 §§ 41 to 48, inclusive, the liquor permit law, is expressly repealed by the provisions of this clause of the statute in question. This alcohol permit law made it unlawful for any person, etc. to import into the State of Oklahoma, any intoxicating liquor containing more than four per cent of alcohol by volume without first securing a permit from the Oklahoma Tax Commission. These permits were to be issued for a fee of $2 and were only issuable where the alcoholic liquor was to be used for scientific, mechanical, medicinal, or sacramental purposes under the provisions of the act. The act was passed by the Oklahoma Legislature in 1939, in order to secure the protection of the Federal Government in the state's effort to prevent the importation or transportation of liquor into Oklahoma, a dry state.

Prior to the passage of the 1939 act, it had been held that the Federal Liquor Enforcement Act, 27 U.S.C.A. § 221 et seq., is inapplicable to Oklahoma, for the reason that the act makes importation or transportation of liquor into a dry state a federal offense only when such state prohibits all such importation or transportation by its laws or requires permits or licenses to accompany liquor lawfully imported. Dunn v. United States, 10 Cir., 98 F. 2d 119, 117 A.L.R. 1302.

The constitutionality of said act has been sustained. Harris v. State, 74 Okla. Cr. 13, 122 P. 2d 401, 402.

Attack was made upon that act on the ground that it contained two different subjects, the same as the attack which is made upon the act here involved.

In disposing of the constitutional objection this court held, in Harris v. State, supra:

"The purpose of ch. 16, Laws 1939, 37 O.S. 1941 §§ 41, 42, 43, 44, 45, 46, 47, 48, is to provide for importation under permit system for certain limited and specified purposes only, and a provision prohibiting importation without permit for all purposes is essential to make the act effective and is referable and cognate to the subject expressed in the title which recites that the act creates and provides for permit system for importation and transportation of liquor into the state for scientific, sacramental, medicinal, or mechanical purposes, and forbids importation of such liquor without a permit."

As to whether the repeal of the alcohol permit law is germane to the other provisions of House Bill Number 254, we are impressed with the argument of the Attorney General, but we are bound by the rule long ago adopted by this court and apparently universally followed by the courts in other jurisdictions; that the conflict between the provisions of the statute must be plain or

palpable and must be so incongruous and diverse to each other that the court can say that by no fair intendment can they be considered as having any connection with or relation to each other.

Applying this rule of law, it appears to us that the repealing of a law requiring a permit for the importation of alcoholic liquors is not clearly or plainly diverse and nongermane to a statute defining and classifying alcoholic liquors and requiring permits from various dealers in nonintoxicating alcoholic liquors. The whole act deals with the one subject matter of alcoholic liquors. We feel impelled under the law where any doubt at all exists as to the constitutionality of a statute to resolve that doubt in favor of sustaining the legislative enactment.

Counsel for the state may be absolutely correct in his assertion that the manner in which the repeal provision was inserted in the bill was a deception practiced upon the remaining members of the Legislature who were not members of the committee who inserted the repeal provision, and that the great majority of the members of the Legislature at the time the act was passed did not know that they were repealing the alcohol permit law. If this assertion is correct, the Legislature is now in session and this alleged deception can be remedied by the re-enactment of the alcohol permit law.

One other question has been raised in this proceeding, the petitioners were charged with having imported approximately 2,800 pints of intoxicating liquor in the state without a permit on May 9, 1947. Counsel for the state contend that even though the 1947 Act constituted an effective repeal of the alcohol permit law, that under the express language of the statute it did not become operative and effective until midnight June 30, 1947.

In answer to this contention of the state, counsel for the defendant assert that the act contained an emergency clause in due form which placed the act in full force and effect upon its passage and approval by the Governor. It was approved April 24, 1947.

Section 21 of the act provides:

"This Act shall become operative and effective for the purposes of administration and enforcement at midnight, June 30, 1947;"

Section 22 of the act contains the emergency clause providing that the act shall be effective from and after its passage and approval.

A similar question was presented to the Supreme Court of Oklahoma in the case of Cities Service Oil Company v. Oklahoma Tax Commission, 191 Okla. 303, 129 P. 2d 597, in which the court laid down the following rule of law:

"A provision in a statute placing the same in full force and effect on a specified future date is controlling, notwithstanding the emergency clause attached thereto as provided by section 58 article 5 of the Constitution provides that said statute shall take effect and be in full force after its passage and approval."

In the opinion it is stated:

"The controversy involves only the effective date of the repealing section, and arises under the provision of section 40 and the emergency clause of the statute. Section 40 reads as follows: 'This Act shall be in full force and effect on and after January 1, 1940.'

"Then follows an emergency clause in due form placing the Act in full force and effect upon its passage and approval. It was approved April 18, 1939.

"Plaintiff contends that the emergency clause was controlling and that by reason thereof the 1937 Act was

repealed as of April 18, 1939. It is said that if there is any uncertainty as to the time the repealing clause became effective plaintiff, as the taxpayer, should be favored in the construction of the statutes, as is the rule in this state.

"The legislative intent is the controlling element in the judicial interpretation of statutes. But if they contain no inconsistent provisions, no ambiguities or uncertainties, no occasion exists for the application of rules of construction and they will be accorded the meaning as expressed by the language therein employed. In re Assessment of Champlin Refining Co., 186 Okla. 625, 99 P. 2d 880. The rule is there stated as follows:

" 'Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.' "

"It is urged that section 40 and the emergency clause of the Act, supra, are in conflict with reference to the effective date of the clause repealing the former Act. It is said that in such situation the last of the conflicting sections will control, which in this case was the emergency. Authorities from other states are cited.

"But we see no irreconcilable conflict between the two sections. The power of the Legislature to fix the effective date of a measure is controlled by section 58, article 5 of the Constitution. That section provides that no Act, with the exception of certain types of legislation not here involved, shall take effect until ninety days after adjournment of the session in which the same was enacted, unless the emergency clause is attached to the bill. The Constitution neither requires that all acts without the emergency become effective at the expiration of ninety days from adjournment nor that the emergency when added must fix the effective date as of the day of passage and approval. Without the emergency, bills of this character cannot take effect under ninety days,

but the Legislature may suspend their operation beyond ninety days. Leatherock v. Lawter, 45 Okla. 715, 147 P. 324.

\* \* \* \* \* \* \* \*

"Although the emergency clause in this case provided that the Act take effect and be in full force from and after its passage and approval, that provision should be looked upon as subordinate to the express provision contained in the body of the Act suspending its operation until a future date. The emergency clause may serve a particular and important function in such case for the reason that the day of adjournment cannot in every instance be foreseen at the time of the enactment, and if the emergency clause is attached to the measure it will go into effect on the day fixed therein notwithstanding that day may later turn out to be less than ninety days from the date of adjournment. Thus, where the purpose of a statute will be wholly or partially thwarted unless it becomes effective on a particular date, the emergency clause will insure its operation at the designated time regardless of the date the Legislature may have adjourned.

"By the Act of 1939 the Legislature clearly intended to abolish the tax provided for in the Act of 1937, and to substitute another tax therefor, all as of January 1, 1940. The emergency clause attached to the Act of 1939 merely insured the commencement of its operation on January 1, 1940, regardless of the date of adjournment of the Legislature that enacted the measure."

In the instant case, if we should hold that the emergency clause prevails over that provision of the act making it effective, for the purpose of administration and enforcement, midnight June 30, 1947, it would mean that there would have existed no law relating to the sale of 3.2 (legislative defined "nonintoxicating") beverages during the period from April 24th to July 1st. The legislative intent is plain. By the emergency clause the Leg-

islature intended to prevent the 90 days delay in the effective date of the act which would have resulted in the absence of the emergency clause. At the same time, the members of the Legislature intended that the act should not become effective until July 1st, which was the beginning of a new fiscal year.

We often find the Legislature passing a bill with the emergency clause attached but postponing the effective date of the act to some definite future time. Evidently the purpose of the Legislature in many of these acts, including the one in the instant case, was to avoid a referendum vote upon the act and to further insure a definite date it would become effective. In the instant case, had the emergency clause not been attached, the act would not have become effective until August, 1947, which was 90 days after the adjournment of the Legislature, irrespective of the clause making it effective at midnight June 30, 1947. It is evident to us that the insertion of the emergency clause was for the sole purpose of insuring that the act would become effective on July 1, 1947.

It is our conclusion that the act is constitutional and does not contain two wholly irreconcilable, diverse and non-germane subjects.

It is our further conclusion that the act did not become effective until July 1, 1947, and that at the time the petitioners were charged with a violation of the liquor permit law on May 9, 1947, the act was in full force and effect, and they were subject to prosecution for any violation of said law.

It appearing that the prosecution was correctly instituted for the reason that the alcohol permit law was in full force and effect on May 9, 1947, it is ordered that

404

the writ of habeas corpus be and the same is hereby denied.

BRETT, J., concurs. BAREFOOT, J., concurs in part, dissents as to seventh syllabus.

BAREFOOT, J. I concur in the above opinion, except as to that part which holds the effective date of the Act was at midnight on June 30, 1947, and not April 24, 1947.

I am of the opinion that the Legislature intended by Section 22 of Chapter 2 of the Act of the Legislature of 1947 to repeal sections 41 to 48 inclusive, Oklahoma Statutes 1941, and that by placing the emergency clause thereto it was intended to be in effect on April 24, 1947, the date of the passage of the Act. It is unnecessary to state my reasons for this conclusion. Von Patzoll v. United States, 10 Cir., 163 F. 2d 216.

I therefore am of the opinion that the writ of habeas corpus should be granted in this case, and the defendants discharged.