**UNITED STATES v. WILLIAMS et al.**

No. 4092.

United States Court of Appeals
Tenth Circuit.

Oct. 18, 1950.

664

Hobart Brown, Tulsa, Okl., and Robert E. Shelton, Oklahoma City, Okl., (Whit Y. Mauzy and John S. Athens, Tulsa, Okl., on the brief), for appellant.

Judson H. Pierce, Perry, Okl., for appellees.

Irvine E. Ungerman, Tulsa, Okl., amicus curiæ.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The appellees were indicted in the United States District Court for the Western District of Oklahoma, charged with the crime of unlawfully importing and transporting intoxicating liquor from the State of Kansas into the State of Oklahoma in violation of the Federal Liquor Enforcement Act of 1936, as amended, (Title 18 U. S.C.A. § 1262). The appellees filed a motion to dismiss the indictment. The basis for the motion was that the Oklahoma statutes did not prohibit all importation of liquors into that state or provide for a permit system as required by the Federal Act. The trial court sustained the motion and dismissed the indictment, D.C., 89 F.Supp. 929. This appeal followed.

So far as is applicable here, the aforesaid Federal Statute provides:

"Whoever imports, brings, or transports any intoxicating liquor into any State, Territory, District, or Possession in which all sales, except for scientific, sacramental, medicinal, or mechanical purposes, of intoxicating liquor containing more than 4 per centum of alcohol by volume or 3.2 per centum of alcohol by weight are prohibited, otherwise than in the course of continuous interstate transportation through such State, Territory, District, or Possession or attempts so to do, or assists in so doing,

"Shall (1) if such liquor is not accompanied by such permits, or licenses therefor as may be required by the laws of such State, Territory, District, or Possession or (2) if all importation, bringing, or transportation of intoxicating liquor into such State, Territory, District, or Possession is prohibited by the laws thereof, be fined not more than $1,000 or imprisoned not more than one year, or both."

██ This court held in Dunn v. United States, 10 Cir., 98 F.2d 119, 121, that transportation of liquor into a dry state was not an offense under the Federal statute unless "that state by its laws prohibits all importations or transportation of intoxicating liquors thereinto, or provides for and requires a permit or license to accompany intoxicating liquor that may be lawfully imported or transported thereinto." It is therefore clear that to make the Federal Act effective a dry state must either prohibit all importation or transportation of liquor into that state or require a permit or license to accompany liquor which may be lawfully imported or transported into the dry state. Following the Dunn case the Oklahoma legislature enacted a law which met the requirements of the Federal statute, Ch. 16, O.S.L.1939, 37 Okl.St.Ann., Secs. 41 to 48 incl., and the Federal Act was thereafter applicable in Oklahoma. Hayes v. United States, 10 Cir., 112 F.2d 417; Tucker v. United States, 10 Cir., 123 F.2d 280. In 1947 this act was repealed and federal enforcement was no longer effective in that state. Ex parte Lee, Okl.Cr.App., 203 P.2d 720; Von Patzoll v. United States, 10 Cir., 163 F.2d 216. The United States relies upon an Act of the 1949, Oklahoma Legislature, 37 Okl.St.Ann., Secs. 49.1 to 49.6 inclusive, to sustain its position here. This Act creates and provides for a permit system for the importation and transportation of intoxicating liquors into the State of Oklahoma for scientific, sacramental, medicinal or mechanical pur-

poses.[1] It is conceded that this Act does not prohibit the importation of all liquors into Oklahoma. We have only to consider whether the permit system provided for in the Act is sufficient to meet the requirements of the Federal statute. The act requires a permit only for the importation of intoxicating liquors for scientific, sacramental, medicinal and mechanical purposes. So-called legal liquor in Oklahoma is not confined to that used for the purposes named in this statute. It has been repeatedly held by the Oklahoma courts that possession of liquor for one's own use is not unlawful and that an Act purporting to make such possession unlawful is unconstitutional. King v. State, Okl.Cr.App., 163 P.2d 248; Ex parte Wilson, 6 Okl.Cr. 451, 119 P. 596; Johnson v. State, 6 Okl.Cr. 490, 119 P. 1019; McCarthy v. State, 6 Okl.Cr. 483, 119 P. 1020. In Johnson v. Yellow Cab Transit Co., 10 Cir., 137 F.2d 274, 277, this court went further when it said: "If it is beyond the power of the legislature to make unlawful the possession of intoxicating liquor for personal use, it must likewise be beyond its power to make unlawful the possession * * * for personal use received from a common carrier."

The apparent purpose of the requirements in the Liquor Enforcement Act of 1936, as amended, was to simplify enforcement by Federal Agents. It was designed to provide federal protection to dry states against violations directed from the outside. Tucker v. United States, supra. If the law of the dry states prohibited all importation or required permits for all lawful importations, legal importations could be readily determined at the border. This was the manifest intention of Congress when the law was passed. Dunn v. United States, supra. If the dry state did not prohibit all importations but provided for a permit system allowing importations for limited or special purposes, then to make the Federal Act effective all other importations without a permit must be prohibited. Hayes v. United States, supra. This the Oklahoma statute has failed to do. The

---

1. The pertinent sections are as follows:

"§ 49.1. Permits authorized—Purposes—Bond.—

"Permits may be issued, as in this Act provided, for such importation and transportation of alcohol for scientific or mechanical purposes by and to such scientific institutions, universities and colleges as are authorized to secure the same free of tax under the laws of the United States, and alcohol by and to hospitals and sanitariums for medicinal use in such hospitals and sanitariums, and for the importation and transportation of alcohol to and by any apothecary, druggist, pharmacist, or manufacturing agency who shall need same for such purpose and who shall have executed a bond to the State of Oklahoma, approved by the Tax Commission of the State of Oklahoma, in the sum of not less than One Thousand Dollars ($1,000.00), conditioned that none of said alcohol shall be used or disposed of for any purpose other than in the compounding of prescriptions or other medicines, or in such manufacturing business, the sale of which prescriptions, medicines, or manufactured products would not subject him or it to the payment of the special tax required of liquor dealers by the United States. Permits may also be issued for the importation and transportation, or causing to be imported or transported into this State, of wine for sacramental purposes. No permit shall be issued to any person, or for any purpose, or for the importation of any intoxicating liquor, except as specifically authorized under this Section."

"§ 49.2. Necessity of permit—Possession and exhibition—Return and cancellation.—

"Any person, individual, firm, corporation, or association desiring to import, bring in, or transport intoxicating liquor, containing more than four per cent (4%) of alcohol by volume, shall first secure from the Tax Commission of the State of Oklahoma, a permit as herein provided. Such permit shall accompany such intoxicating liquor at all times while being imported, brought into and transported into and in the State of Oklahoma, shall be in possession of the person or carrier transporting the same and shall, upon demand, be exhibited to any peace officer or other duly constituted agent or representative of the State of Oklahoma, or such officer of the United States of America. When said intoxicating liquor shall have reached its destination, such permit shall be returned to the said Tax Commission and by it marked 'cancelled'."

666

Federal Act left to the dry states the decision as to whether or not there should be Federal enforcement in the state. We think the State of Oklahoma, in the decision it made, did not meet the requirements necessary to bring the Federal Act into force and effect there.

The United States urges that to hold as we do here leaves the Oklahoma Act meaningless and an absurdity. This may be true but the court cannot read into the law something that is not there. It is difficult to determine just what the Oklahoma Legislature had in mind when it passed the 1949 Act. While it was considering the present law, it failed to pass a bill which was identical to the 1939 law and met the requirements of the Federal Act. It specifically repealed the 1939 Act for a second time. This action seems to have been prompted by the contention of the Attorney General of the State of Oklahoma that there had not been an effective repeal of the 1939 Act. Ex parte Lee, supra. This in itself may be taken as an indication that Federal enforcement was not desired. 50 Am.Jur., Statutes, Sec. 330. No doubt the legislature may be indirect and confusing where it could be direct and clear, but we do not think that had it concluded that Federal enforcement of its liquor laws was desirable that it would have set about to obtain such enforcement by artifice rather than by plain terms.

Judgment is affirmed.