Felix Franklin JACKSON, Jr.,
Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13562.

Court of Criminal Appeals of Oklahoma.

Feb. 24, 1965.

Rehearing Denied April 28, 1965.

John B. Ogden, Oklahoma City, for plaintiff in error.

· Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Plaintiff in Error, Felix Franklin Jackson, Jr., hereinafter referred to as the defendant, was charged by information in the District Court of Oklahoma County with the crime of Attempted Burglary Second Degree After Former Conviction of A Felony. He was tried by a jury, found guilty, and his punishment assessed at 9 years in Oklahoma State Penitentiary. From this judgment and sentence he now appeals to this Court asserting numerous errors.

First, we will briefly outline the facts of the case. Mr. Goddard (the prosecuting witness) owns and operates a repair shop at the corner of S.W. 30 and Robinson. On the night of April 1, 1964, at approximately 8:30 p. m., he was returning to his home (to watch his store, as it had been burglarized several times recently) and was driving by his shop. He noticed a dog sitting there facing the building and he recognized it as being with the defendant when he was in the shop earlier in the day. He stopped and pulled into where his carlights were

shining on the northwest corner. There he observed defendant attempting to pull off a board nailed over the window. Then, regarding the next sequence of events, his testimony is as follows:

"Q. By Mr. Cunningham—Did you talk to the defendant there at that time?

"A. No, he took off and went north behind another building adjoining mine.

"Q. He took off in what manner?

"A. Well, at a pretty fast gait. He went over there and went through east to Robinson Street.

"Q. Did you follow him?

"A. I tried to but the traffic was heavy and I couldn't get out on the street. I drove down to Robinson St. and the traffic was heavy coming both ways and I had to wait for awhile and by the time I could get onto Robinson, he was almost to 29th Street, going north.

"Q. Was he still in your sight?

"A. Yes, he was, with that dog following him. And so I turned on Robinson and went as far as the Capitol Hill Drive-In, which is about a half block between the two streets, 29th and 30th, and the cars were stopped up there for a red light, and he had turned west on 29th by that time and so I just turned around and came back and parked in behind my business and stood there and waited, and oh, in a minute or so, why, he came through the alleyway, on up the street there about a half a block, with this dog still following him, and cut across and went into his apartment.

"Q. Could you see where his apartment was from where you were?

"A. Oh yes.

"Q. Are you positive this is the man you saw?

"A. Absolutely.

"Q. How was he dressed?

"A. Well, he had a dark coat on, a little longer than hip length, with light tan trousers.

"Q. How was he dressed earlier in the day?

"A. Well, he had on practically the same trousers but I don't believe he had that dark coat on when he was in there during the day.

"Q. How long had you known the defendant prior to that time?

"A. Well, he had been coming to the shop there, oh, I would say, for the past eight months.

"Q. The location of your building, that you testified to, is it located in Oklahoma City?

"A. It is.

"Q. And is that in Oklahoma County, State of Oklahoma?

"A. It is.

"Q. What did you do after you drove into this drive-in, you say?

"A. Across the street?

"Q. No, I am sorry, the second time when you saw him going into his apartment, what did you do?

"A. I went into the shop and called the police.

"Q. Do you know the policement that came out?

"A. Yes, there was a Bear and a Blair.

"Q. What type of covering was over the windows at the back of your building? Did you have occasion to investigate that?

"A. After the officers got there, we went around and examined the building there and there is a window on in a little farther on the other side of the rest room. The rest room juts out and there is a kind of a cubicle in there and there was a screen over that, that window, and that screen had been torn off at the bottom.

"Q. Had you seen that window earlier that day?

"A. Yes, we checked it quite often.

"Q. Had it been torn earlier that day?

"A. No, it hadn't been torn.

"Q. And the covering of this other window that you talk about, what type of material was it?

"A. It is plywood, heavy plywood.

"Q. And that is what you testified to?

"A. Yes.

"Q. I believe that is all."

The police officer, Jim R. Blair, testified that they were sent to investigate Mr. Goddard's call. Upon receiving his information, they went to the apartment, were let in by defendant's brother. They talked to defendant, who at that time was in bed. They returned and talked to Mr. Goddard again, examined the building and returned and arrested defendant, who was subsequently charged with this crime.

Defendant's first contention of error is that the identication of the defendant was insufficient.

■ With this, we cannot agree. Seldom have we observed such positive identification or such positive testimony. For example, on page 45 of the casemade, he was asked:

"Q. Did you holler at the man?

"A. No, sir; I didn't need to holler. *I recognized him. I knew who he was.*" (Emphasis ours)

Defense counsel questioned him extensively, and never was this identification refuted. Counsel asserts several statements which do not actually appear in the record. Nevertheless, in the early case of Queen v. State, 35 Okl.Cr. 412, 250 P. 935, this Court said:

"The credibility of the witnesses and the weight and value to be given their

testimony is within the exclusive province of the jury to determine, and the jury may believe the evidence of a single witness upon a question of fact and disbelieve several others testifying to the contrary."

See, also, Keck v. State, Okl.Cr., 376 P.2d 525.

■ Defendant's second proposition is not supported by the record, nor authorities of law, nor is it incorporated in his Motion for New Trial, so we will go on to proposition number three, which is that the Verdict of the Jury was influenced by passion and prejudice. Counsel contends that the jury was influenced because of defendant's previous record.

■ The County Attorney and the trial court, followed the procedure set out by this Court in the case of Harris v. State, Okl.Cr., 369 P.2d 187:

"The information should be divided into two parts. In the first the particular offense with which the accused is charged should be set forth, and this should be upon the first page of the information and signed by the prosecuting officer. In the second part former convictions should be alleged, and this should be upon the second page of the information, separable from the first page and signed by the prosecuting officer."

This was complied with, and even defense counsel stipulated to the former convictions. (page 110 cm)

■ Certainly no passion or prejudice on the part of the jury can be concocted from the record in this case.

■ Defendant's fourth proposition has no merit, as it is not supported by fact. Proposition number five is that the trial court failed to instruct on circumstantial evidence. Defendant cites many cases that state the law, but is not applicable to the instant case. There was no circumstantial evidence—it was direct evidence. Therefore, it could not have been error for the trial court to fail to instruct on same.

Further, no instruction was requested by defense counsel at the time, and we find this proposition wholly without merit.

It is the opinion of the Court that there is no error worthy of reversal in the case at bar. On the contrary, it is a very well tried case. The facts were simple, and they were presented to the jury for their decision. This is in accordance with our basic rights, and defendant was certainly accorded all of his. The fact that the jury found him guilty of this crime is not error.

Therefore, the judgment and sentence of the trial court is hereby affirmed.

JOHNSON, P. J., and BUSSEY, J., concur.