Robert Eugene KING, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–754.

Court of Criminal Appeals of Oklahoma.

Feb. 5, 1982.

Rehearing Denied March 4, 1982.

Mark Barrett, Asst. Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Crim. Appellate Div., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Robert Eugene King, hereinafter referred to as defendant, has appealed his four (4) convictions rendered in Tulsa County District Court Case Nos. CRF–79–3857, CRF–79–3858, CRF–79–3859 and CRF–79–3860. Defendant's convictions for Rape in the First Degree, Arson in the First Degree, Assault and Battery with Intent to Kill and Robbery by Force are after former convictions of four (4) felony offenses for the crimes of Sodomy, Attempted Rape and First Degree Burglaries. Punishment was set at five hundred (500) years' for the crime of Rape, three hundred fifty (350) years' for the crime of Arson, three hundred fifty (350) years' for the crime of Robbery and five hundred (500) years' for Assault and Battery with Intent to Kill. The sentences run consecutively. A brief has been filed on behalf of the defendant alleging fourteen (14) errors in the trial.

Many of these assignments of error have been waived since no objection was taken thereto. This opinion will address those allegations which have been preserved for appellate review or otherwise merit discussion.[1]

Sister K., was the victim of a most vicious attack which thereafter required a slow and painful period of recovery and convalescence in the Burn Center of Hillcrest Hospital in Tulsa. She is a member of a Franciscan Order of Catholic Sisters and had been assigned duties in Tulsa, where she administered to the needs of persons in three catholic parishes. Sister K.'s living quarters were provided by St. Jude's parish and were located in a house adjacent to St. Jude's Church.

On the afternoon of December 18, 1979, at approximately 2:00 o'clock p. m., Sister K. returned home from a Christmas music program. She encountered the defendant outside the residence on the side lawn. The defendant requested directions to some local street in Tulsa which Sister K. was able to provide. Thereupon Sister K. entered her residence and immediately thereafter she heard the doorbell ring. Upon opening the door she discovered the defendant standing outside. He explained that he had not understood the directions she had given and asked to use the telephone. The defendant entered the residence, walked over to the telephone and commenced dialing. He then rushed toward Sister K., grabbed her and began beating her. The defendant demanded money. Sister K. informed the defendant there was no money which defendant did not believe. He continued to search the residence for money, removed approximately four dollars ($4.00) from Sister K.'s purse and took her watch and gold commitment ring. The defendant cursed Sister K., tore off her blouse, pulled down her slacks and forced her to have sexual intercourse. The defendant drug her from room to room searching for money assuming the Sister was lying. The defendant bound the Sister's hands and tied a rag around her mouth to muffle her screams. Sister K. was then clubbed with a lamp, her feet were tied, and something was placed around her neck which caused her to choke and gag. Thereafter, the defendant set fire to the home and threw Sister K. into the fire. Although she had suffered significant injury she was able to drag herself to an exit at which time two police officers who had been dispatched to investigate a fire saw Sister K. and removed her from the burning house. Sister K. provided the officers with a description of her assailant which ultimately led to the defendant's arrest and convictions.

■■■ The defendant alleges in one of his assignments of error that he should not be punished separately for his multiple offenses. We do not agree. It is clear that each of the acts was distinct from the other and that the elements of proof of the different crimes did not overlap each other. In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Supreme Court reiterated the established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment. The rule is that where the same transaction constitutes a violation of two or more statutory provisions, the test to be applied to determine whether there are two offenses is whether each provision requires proof of a fact which the other does not. In applying the test to the instant case it is readily apparent that none of the offenses are the same. Each offense consists of separate and distinct elements, none of which merged into the proof of any of the others. We do not find an abuse of discretion by the trial court in directing defendant's sentences to be served consecutively rather than concurrently. See, *Ziegler v. State*, 610 P.2d 251 (Okl.Cr.1980.)

1. We have reviewed the proposition that the trial court erroneously allowed the bailiff to read the instructions of the court to the jury; that the trial court committed error by instructing the jury that excerpts of testimony would not be provided; and that the instruction on flight was improper. The defendant has failed to demonstrate that he was prejudiced from any of the above, objections thereto were not made, and none of these contentions are fundamental.

■ In another assignment of error the defendant argues that the State improperly elicited evidence of other crimes. At the outset we find that the alleged error has been waived since no objection thereto was made during trial. *Walker v. State*, 608 P.2d 1156 (Okl.Cr.1980); *Boyd v. State*, 572 P.2d 276 (Okl.Cr.1977). Were we to consider the defendant's contention that the testimony concerning the watches found at defendant's residence could only cause the jury to conclude that these watches were stolen, we would not agree with defendant's conclusion nor would we find the authority cited in support of his argument applicable. It was the defendant who first elicited testimony from Officer Brown concerning the watches at defendant's residence.[2]

■ If the testimony of Officer Brown on cross-examination and redirect examination is considered in context we would not find that the inference left with the jury was such that they would have concluded the watches as stolen. Officer Brown had already stated that most of the watches were either empty cases or broken. If the watches were stolen that fact could only have been known by the defendant but not the jury. The testimony did not convey evidence of another crime to the jury. An implication of another crime which is obvious only to defense counsel is not inadmissible as evidence of other crimes. *Byrne v. State*, 620 P.2d 1328 (Okl.Cr.1981). Further, when there is no evidence of another crime, an instruction covering that subject is unwarranted even when requested. In this case none was requested.

In another assignment the defendant contends that the State failed to plead his convictions for prior felony offenses after the State amended the information on the charge of assault and battery with intent to kill.

This argument is specious for under the second and subsequent offense statute an information must be divided into two parts. The first page must set forth the particular offense with which the accused is charged, and the second page must contain the former convictions. *Jackson v. State*, 401 P.2d 199 (Okl.Cr.1965); *Pierce v. State*, 383 P.2d 699 (Okl.Cr.1963). In the instant case the information was indeed amended but the amendment applied to page one not page two, the former convictions were never stricken nor otherwise deleted. At the commencement of the second stage of trial the jury was appropriately informed of the defendant's four prior felony convictions as pled in the four instant cases for which the defendant had been previously convicted. There was no error.

■ The defendant also contends that evidence of his prior convictions was insufficient to establish that he was the same person previously convicted.

The four prior convictions relied on by the State were all obtained in Tulsa County. The name of the defendant reflected on the judgments which were introduced and admitted in evidence, without objection, are identical to defendant's. No evidence was presented by the defendant concerning this issue.

In *Williams v. State*, 364 P.2d 702 (Okl. Cr.1961) we stated in the syllabus as follows:

In regard to proof of former conviction under the habitual criminal act, 21 O.S. (1951) § 51, [now 21 O.S.Supp.1980, § 51]

---

2.    Q. Were you aware that [Sister K.] had a watch stolen from her at the time of the incident we're concerned about?

A. At the time I arrested the defendant, no, sir, I was not aware of it.

Q. You learned of that later, didn't you?

A. Yes, sir, I learned she had a watch taken.

Q. Did you find any watch over there at Mr. King's house?

A. Sir, I observed quite a few watches in the same bedroom, both ladies and mens watches. Most of them were broken, some of them were just cases.

Q. Having observed those watches and later finding out that a watch had been taken from [Sister K.], did you ever go back either with a search warrant or, perhaps, to ask permission of one of the residents of the house if you could look and see if one of those watches might not be the one that was taken from [Sister K.]?

A. No, sir, I did not.

the identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person, and, in the absence of rebutting testimony, supports a finding of such identity. This will leave the question of identity to be determined by the jury, after a proper instruction has been given, upon a consideration of all surrounding facts and circumstances, such as commonness or unusualness of the name, the character of the former crime or crimes, and the place of its commission.

Also see, *Brown v. State*, 578 P.2d 364 (Okl. Cr.1978); *Frazier v. State*, 563 P.2d 656 (Okl.Cr.1977).

In the case at bar, the name Robert Eugene King is not sufficiently common to warrant negation.

■ Next the defendant challenges the constitutionality of the enhanced penalty statute, 21 O.S.Supp.1980, § 51(B). This statute was part of a two part bill passed in 1978 (HB 1753). The other part of the bill consisted of a schedule of fines for traffic violations. The defendant alleges that the two part bill embraces more than one subject, in violation of Article 5, § 57 of the Oklahoma Constitution.[3] An examination of the title of the bill reveals that it addresses the subject of crimes and punishments, thereby encompassing both the enhanced penalty statute and the traffic violations schedule. This constitutional provision should be interpreted liberally and broadly, with due regard to its purpose. *Ex parte Lee*, 88 Okl.Cr. 386, 203 P.2d 720 (1949); *Bond v. Phelps*, 200 Okl. 170, 191 P.2d 938 (1948). The enhanced penalty statute does not violate Article 5, § 57 of the Oklahoma Constitution.

■ The defendant has also assigned as error the trial court's refusal to allow his expert witness to testify about an instance wherein a misidentification of a defendant had occurred. Although the State's objection to that particular matter was sustained we observe that the trial court provided the

defendant great latitude in examining Dr. Luce. When the totality of this witness's testimony is considered we do not find that he was unduly restricted. Dr. Luce stated that in his opinion the victim's identification was suspect and inaccurate due to factors of stress and violence. The witness explained why caucasions have difficulty identifying members of the negro race alluding to studies in that regard. Dr. Luce was allowed to provide his opinion on the ultimate issue of identification and give his reasons therefor. We fail to find error by the trial court in refusing Dr. Luce to testify about the totally nonrelated case. Evidence thereof would not have aided or assisted the jury. Thus, the exclusion of this evidence was not in violation of our Evidence Code. 12 O.S.Supp.1980, § 2701–2705.

■ Next the defendant contends that the trial court was required to caution the jury on eyewitness identification by way of instruction although no request therefore was made. We have repeatedly held that to preserve an issue for appellate review defense counsel must enter objection at trial and submit a requested instruction in writing, otherwise the matter is waived. In the instant case Sister K. spent some one and one half hours with her assailant. Sister K. observed and spoke with the defendant outdoors in clear daylight for some five to ten minutes and again spoke to and observed him at the entrance of the residence before he gained entry. Sister K.'s identification of the defendant has been firm, positive and consistent throughout all the proceedings from the very beginning. She has not been hesitant nor doubtful. In this case there was no necessity for an instruction covering eyewitness identification. *Roberts v. State*, 620 P.2d 425 (Okl. Cr.1980); *Hall v. State*, 565 P.2d 57 (Okl.Cr. 1977).

■ In another proposition regarding the court's instructions, the defendant states that the recent Supreme Court decision in *Carter v. Kentucky*, 450 U.S. 288,

---

3. "Article 5, § 57 provides in part that "every act of the legislature shall embrace but one

subject, which shall be clearly expressed in its title . . . "

101 S.Ct. 1112, 67 L.Ed.2d 241 (1981) required the trial judge to instruct the jury that they not draw inferences from the fact that the defendant did not testify. The holding in *Carter* is limited to cases where a defendant does not testify and requests such an instruction:

> [W]e hold that a state trial judge has the constitutional obligation, *upon proper request,* to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify. (Emphasis added)

Accordingly, the proposition is without merit since no request was made by defendant.

■ The next assignment of error raised by defendant concerns the conduct of the prosecuting attorney. He argues that comments by the prosecutor during trial and closing argument were improper. After a complete review of the matters specified by the defendant we find that the comments were either invited or objections thereto not made. Wide latitude is allowed both state and defendant in commenting on the evidence and drawing inferences from it. We do not find that the prosecuting attorney exceeded the limits of propriety in this case. *Russell v. State,* 528 P.2d 336 (Okl.Cr.1974); *Lung v. State,* 420 P.2d 158 (Okl.Cr.1966).

■ Lastly, we turn to the defendant's argument that the sentences are excessive and should be modified. In support of his argument the defendant submits that the evidence is weak and that the sentences exceed the norm for the types of crimes involved. This argument is patently frivolous. *Fields v. State,* 501 P.2d 1390 (Okl.Cr. 1972); *Futerll v. State,* 501 P.2d 901 (Okl. Cr.1972); *Callins v. State,* 500 P.2d 1333 (Okl.Cr.1972). The evidence amply supports the verdicts of the jury, and the punishment imposed does not shock the conscious of the court.

The judgments and sentences appealed from are AFFIRMED.

BRETT, P. J., and CORNISH, J., concur.