**Larry Dale PENINGER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–83–626.**

Court of Criminal Appeals of Oklahoma.

July 15, 1986.

William S. Flanagan, Yukon, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Deputy Chief, Criminal Div., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

The appellant, Larry Dale Peninger, was charged by information in the District Court of Oklahoma County, Case No. CRF–83–246, with the crimes of Kidnapping, Oral Sodomy, Anal Sodomy, and First Degree Rape. He was convicted on each count and sentenced respectively to ten (10) years'; twenty (20) years'; twenty (20) years'; and, seventy-five (75) years'. The trial court set the sentences to run consecutively in addition to assessing a $500 payment on each count to the Victim's Compensation Fund within one year of the de-

fendant's release from prison. From this judgment and sentence appellant has perfected an appeal to this Court.

On January 7, 1983, Oklahoma City resident D.D. went to a local night spot to meet some friends. After leaving the club D.D. went to a nearby Save-A-Stop for gas. As she was pumping the gas, the appellant pulled up next to her and asked for directions to a local night spot. D.D. gave the appellant directions but he then asked her to write it down for him and handed her a pen and a piece of paper. As she began to write down the directions, the appellant put a knife to her throat and forced her into his truck. The appellant ordered her to place her hands underneath his seat so that she could not freely move them and pushed her head down into his lap. Appellant forced D.D. to wear a ski mask backwards over her face so that she could not see where they were going.

The appellant took D.D. to a house in a secluded area. D.D. begged the appellant not to harm her and asked if she could call her parents. D.D. called her mother and told her that she was with a friend and would not be home until later, while the appellant allegedly squeezed her shoulder and instructed her as to what to say. The appellant then made D.D. call the Save-A-Stop where her car was and tell them to park her car at the side of the building.

The appellant forced her to perform fellatio on him, then he performed cunnilingus on her while he forced her to perform fellatio on him again.

She testified that appellant became angry because he claimed that she did not satisfy him and she begged him not to harm her because she had a tumor on her ovary and was under a doctor's care. She testified that she feared the appellant even when he later followed her to the hospital. The appellant forced her to sodomize him again. The appellant then forced D.D. to have intercourse with him. Appellant then performed anal sodomy on D.D. until she began screaming and yelled that her tumor had ruptured and she was going to bleed to death.

The appellant put D.D. in his truck to take her to Mercy Hospital in Oklahoma City. In route to the hospital the appellant spotted two police officers and stopped to ask assistance to the hospital. The appellant got out of his truck and spoke with the officers. D.D. never told the police what had happened because she testified she was scared and embarrassed. The officers testified that D.D. was crying and appeared to be in a state of hysteria.

The ambulance transported D.D. to the hospital. Before the ambulance drove off, however, D.D. instructed the ambulance attendant to get the appellant's license number. The attendant specifically asked whether she had been raped or hurt, and again D.D. testified she told him no because she was frightened. On the way to the hospital, D.D. told the ambulance attendant that appellant was not a friend and that he had abducted her at knifepoint.

D.D. told an Oklahoma City police officer at the hospital that she had not been raped, "but that he put it in my rectum." Once alone with a female nurse, D.D. told her that she had been raped at knifepoint. D.D. was transported by the Village Police from Mercy Hospital to Oklahoma Memorial Hospital for a rape examination.

A search warrant was obtained and the appellant's home was searched on January 8, 1983. Police found the knife and ski mask in the appellant's truck.

The appellant gave several versions of what had happened that night because he testified he wanted to keep D.D. out of trouble with her father. The appellant denied the kidnapping by use of any force, or putting his penis in the victim's mouth, vagina or rectum. Appellant testified that all they did was roll around together on the bed naked.

The doctor who examined D.D. found small flecks of semen on the victim's hands and her right buttock. The doctor found no indication of trauma, injury, contusions, or abrasions around the anus or vaginal area.

Forensic chemist Joyce Gilchrist analyzed the sexual assault kit. Ms. Gilchrist discovered the appellant had Type B blood and was a secretor. The semen present on the victim's right buttock was analyzed to have come from a Type B secretor. Seminal fluid detected on the crotch of the victim's jeans also matched the appellant's Type B secretor status. In addition, hair discovered on the ski mask found in appellant's truck was similar to the victim's hair.

On appeal, appellant asserts he was denied effective assistance of counsel. We have examined this claim in light of the standards announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2042, 2052, 80 L.Ed.2d 674 (1984), and find this claim to be without merit.

■ Appellant's second assignment of error alleges that the evidence was insufficient to support the jury's verdict of guilt. This Court announced the proper test to be used in a sufficiency of the evidence challenge in *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985), as set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) which is:

> Whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.

The jury in this case could have found from the evidence, beyond a reasonable doubt, appellant was guilty of the crimes charged. D.D. testified before the jury that appellant penetrated her orally, anally and vaginally. There appears to be little, if any, physical evidence to bear out D.D.'s testimony. However, the law provides that the slightest penetration is sufficient to accomplish the offense of rape. The jury apparently believed D.D.'s testimony and entered its findings accordingly.

■ Appellant's third assignment of error contends the trial court erred in not giving appropriate jury instructions. Specifically, appellant argues the trial court erred by failing to submit an instruction on corroboration to the jury. The appellant neither objected nor submitted alternative instructions for the trial court to consider; therefore, his right to object to the instructions is waived. *Stratton v. State*, 643 P.2d 645 (Okl.Cr.1982); *Garcia v. State*, 639 P.2d 88 (Okl.Cr.1981). Notwithstanding, there was sufficient evidence to corroborate D.D.'s testimony. Appellant's testimony alone provided sufficient corroboration to support D.D.'s story.

The appellant also asserts that he was denied a fair trial due to the inflammatory and misleading remarks of the prosecutor during closing argument. We have examined the comments complained of, which were not objected to at trial, and find that all were permissible comments on the evidence and reasonable deductions therefrom. *Woods v. State*, 674 P.2d 1150 (Okl. Cr.1984); *King v. State*, 640 P.2d 983 (Okl. Cr.1982).

■ The appellant's fifth assignment of error challenges the sodomy statute as being unconstitutionally vague. 21 O.S.1981 § 886. For disposition of this issue, see *Glass v. State*, 701 P.2d 765 (Okl.Cr.1985); *Golden v. State*, 695 P.2d 6 (Okl.Cr.1985). This assignment of error is without merit.

■ Appellant's sixth assignment of error alleges that appellant's convictions are violative of the constitutional prohibition against double jeopardy. Appellant argues that because the crimes with which he is charged all occurred within a one and one-half to two hour time span and only in relation to one person, this constituted a single transaction.

This Court no longer follows the single transaction theory of the law. Since the cases cited by appellant were rendered, this Court has consistently followed the rule set out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) which stated, "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each requires proof of a fact which the other does not...." 284

**1342**

U.S. at 304, 52 S.Ct. at 182. *See Smith v. State,* 651 P.2d 1067 (Okl.Cr.1982); *King v. State,* 640 P.2d 983 (Okl.Cr.1982).

The fact that the crimes are committed in rapid succession does not negate the fact that separate crimes were committed. *See also Colbert v. State,* 714 P.2d 209 (Okl.Cr. 1986); *Nevaquaya v. State,* 614 P.2d 82 (Okl.Cr.1980). To hold otherwise would open the door for persons to commit any number of crimes simultaneously, knowing they could only be punished for one. We therefore reject this argument.

Appellant next asserts that the sentences imposed were excessive and constitute cruel and unusual punishment. The range of punishment for kidnapping provides for a sentence of up to ten (10) years, which appellant received. 21 O.S.1981, § 741. The minimum punishment for first degree rape is five (5) years imprisonment in the penitentiary. There is no maximum. 21 O.S.1981, § 1115. The jury assessed the appellant's sentence at seventy-five (75) years for the first degree rape.

Appellant was also charged with anal sodomy and oral sodomy in violation of 21 O.S.1981, § 886. Section 886 sets punishment by imprisonment not exceeding ten (10) years. However, as to Count II for the crime of oral sodomy, the information and the trial court's instruction followed the statutory language of Section 888 by adding the language, "by forcing." Thus, from the onset, the appellant was formally charged by information with the crime of forcible oral sodomy, punishment not to exceed twenty (20) years. We cannot say that the above sentences are so excessive as to shock the conscience of this Court. *Kupiec v. State,* 493 P.2d 444 (Okl. Cr.1972).

The appellant was also charged with 21 O.S.1981, § 886, anal sodomy. However, no mention of the word force is in the information. Therefore, appellant was only charged with § 886, punishable up to ten (10) years. It was error to punish appellant under § 888, when he was charged under § 886. Therefore, his sentence should be modified in Count III from twenty (20) years to ten years.

In his final assignment of error, appellant alleges that the accumulation of error at trial requires modification or reversal. From an examination of the record and transcript we conclude that appellant received a fair and impartial trial and that no fundamental errors occurred which would require reversal by this Court. *Woods v. State,* 674 P.2d 1150 (Okl.Cr.1984). Nevertheless, it is the position of this writer that the ends of justice would be better served if the sentences herein were modified to be made to run concurrently. However, due to the position of my colleagues it is necessary that the sentences be served consecutively as ordered by the trial court. It is therefore the order of this Court that the judgments and sentences are AFFIRMED.

PARKS, P.J., and BUSSEY, J., concur.