Steven Keith HATCH a/k/a Steve Lisenbee, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–302.

Court of Criminal Appeals of Oklahoma.

April 12, 1983.

Mark Lea (Beau) Cantrell, Stephen P. McCloy, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Criminal Appellate Div., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Steven Keith Hatch a/k/a Steve Lisenbee, stands convicted of two counts of Murder in the First Degree, and two counts of Shooting with Intent to Kill. The appellant was tried in Canadian County District Court before the Honorable Floyd Martin, without a jury. The appellant was sentenced to death for each of the murder counts; and forty-five (45) years' imprisonment for each of the charges of shooting with intent to kill. We affirm the appellant's convictions on all charges, and affirm the sentences imposed for shooting with intent to kill. We conclude, however, that the sentences of death must be vacated and remanded for reconsideration by the trial court below.[1]

The sordid details of the crimes perpetrated by the appellant and his accomplice, Glen Burton Ake, a/k/a Johnny Vandenover, are set forth in detail in *Ake v. State,* 663 P.2d 1, 54 OBAJ —— (1983).

## I. PRE–TRIAL

The appellant alleges numerous errors occurred prior to the commencement of his trial. First, he argues that a change of venue should have been granted. As

---

1. Therefore, we need not consider the appellant's seventh, ninth and tenth allegations of error.

noted above, however, this case was tried before a judge, the appellant having waived his right to a jury trial. The change of venue question is more properly addressed to situations in which a defendant is to be tried before a jury.[2] Nonetheless, the appellant has failed to preserve the error in his motion for new trial. He has thus waived the issue. *Turman v. State,* 522 P.2d 247 (Okl.Cr.1974).

Secondly, the appellant argues that the judge before whom he was tried should have disqualified himself from the case due to bias on the judge's part.

■ The appellant failed to follow the proper statutory procedure to disqualify the judge. According to 20 O.S.1981, § 1403,

Any party to any cause pending in a court of record may in term time or in vacation file a written application with the clerk of the court, setting forth the grounds or facts upon which the claim is made that the judge is disqualified, and request said judge so to certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do, within three (3) days

before said cause is set for trial, application may be made to the proper tribunal for mandamus requiring him so to do.

No application was filed in this case. Strict compliance with this section is required before a trial judge will be disqualified. *Passmore v. State,* 87 Okl.Cr. 391, 198 P.2d 439 (1948).

Additionally, the appellant failed to object to the judge's alleged bias at trial.

■ In this vein, the appellant argues that trial counsel did not render effective assistance of counsel, because he failed to comply with the applicable statutes to disqualify the judge. The argument must fail, because the appellant has not proven that the judge in this case was biased. The mere fact that the judge held himself out to be a minister of the same faith for which one of the victims was a minister does not persuade us that he was biased or prejudiced against the appellant. Likewise, neither do the excerpts from the transcript of the sentencing stage in which the judge gave consideration to the fact that the victims were involved in the ministry,[3] nor the

---

2. The ultimate question confronting a trial judge in deciding a motion to change venue based on pretrial publicity is whether it is possible to select a fair and impartial jury from the venire panel. The wording of the venue statute, 22 O.S.1981, § 561 lends support to such a conclusion. See also, *Dean v. Stone,* 2 Okl. 13, 35 P. 578 (1894).

We realize, however, that the appellant waived the right to be tried by a jury after the motion for change of venue was overruled. It is quite possible that the election to be tried by the judge was a product of the judge's failure to sustain the motion to change venue. However, in this regard, we find the following language from *Brisbin v. Schauer,* 176 Col. 550, 492 P.2d 835 (1972), persuasive:

·Nowhere did he (the defendant) complain that he could not obtain a fair trial before the trial judge. Under such circumstances the issue of whether the change of venue should have been granted became moot. If appellant desired to attack the validity of the ruling on his motion for change of venue because he could not receive a fair and impartial jury, he should have proceeded to a jury trial and then appealed if the result returned was unfavorable to him. 492 P.2d at 836.

3. The remarks of which the appellant complains were made as the judge was delineating his findings of the aggravating circumstances;

This Court is aware that Ministers of the Gospel have given their total being to God. They have dedicated their lives to services of God in ministering to the needs of their fellow man. A Minister's wife, it seems to me, has a very unique position of dedication in assisting her husband in his own service to God, in addition to her separate beliefs and in individual commitments.

The minor children in such a family are reared up on the way they should go and it becomes their nature to respond when a person in need asks for help.

This Court believes that the killing of the Minister and his wife in the performance of a requested service is extremely wicked, shockingly evil, outrageously wicked and vile, showing that this case has a design to inflict a high degree of pain with utter indifference to the suffering of others.

These comments reflect the horror with which the judge viewed the crimes perpetrated by the appellant and his accomplice, and demonstrate his reasoning supporting his finding that the murders were especially heinous, atrocious or cruel. 21 O.S.1981, § 701.12(4). They

fact that the judge was subsequently seen embracing one of the surviving victims, indicate that the judge was biased against the appellant.

The case upon which the appellant primarily relies to support his argument, *Castleberry v. Jones*, 68 Okl.Cr. 414, 99 P.2d 174 (1940), is distinguishable from the present case. In *Castleberry*, the judge who presided over the defendant's trial was clearly biased against the defendant. The judge and the defendant were "personal political enemies." The judge had been heard to make statements that he could stir up public sentiment and have the defendant "run out of town" in retaliation for the defendant's attempt to defeat the judge in an election. Obviously there is no bias in this case even remotely analogous to that displayed in *Castleberry*.

■ The appellant has failed to establish any prejudice on the part of the trial court. Thus, it would have merited trial counsel nothing to attempt to disqualify the judge. Failure to press meritless claims do not constitute ineffective assistance of counsel. See generally, *United States v. Homan*, 482 F.Supp. 344 (E.D.Okl.1977). The inadequacy of counsel argument is without foundation.

The appellant's fifth allegation of error consists of three subparts in which he alleges fundamental error occurred.

■ First, he argues that the trial judge did not have the power to decide questions of fact in his trial. This argument is based on the fact that Article VII, Section 20 of the Oklahoma Constitution, which provided trial judges with the power to try facts in felony cases, was repealed in 1967. We have held numerous times since that time that a judge may try a case upon a valid waiver by the defendant. *Colbert v. State*, 654 P.2d 624, (Okl.Cr.1982) (and cases cited therein).

■ Secondly, the appellant alleges that the waiver of his right to trial by jury was not knowingly and intelligently made. This

did not however, reflect any bias toward the

allegation is patently frivolous. On April 9, 1980, the appellant appeared in person, and with counsel before Judge Floyd Martin for the express purpose of waiving his right to a jury trial. Judge Martin painstakingly and carefully examined the appellant personally at length to determine whether the waiver was knowing and intelligent. In addition, the appellant's attorney openly examined the appellant to confirm that the waiver was knowing and voluntary. Judge Martin was satisfied, as are we from a reading of the record, that the appellant completely understood the nature and consequences of his waiver. There was no error. See, *Hayes v. State*, 541 P.2d 210 (Okl.Cr.1975).

■ Thirdly, the appellant alleges he received ineffective assistance of counsel because trial counsel failed to insist the State and Judge join in on the appellant's waiver. The transcript referred to above reveals that both the prosecutor and the judge stated they had no objection to the waiver. The requirement of consent by the State and judge as set forth in *Crawford v. Brown*, 536 P.2d 988 (Okl.Cr.1975) was met. Accordingly, the claim of ineffective assistance of counsel fails.

## II. THE CONVICTIONS

■ The appellant argues in allegation number six that the convictions on the two counts of murder and the two counts of shooting with intent to kill were against the weight of the evidence.

The evidence adduced at trial revealed that the appellant voluntarily entered the Douglass' home, armed with a shotgun, knowing that his accomplice (Ake) was also armed. They bound and gagged the family. One of the victims was bound in such a manner that strangulation contributed to his death. The appellant held the family at gunpoint as Ake ransacked their home. The surviving witnesses testified the appellant and Ake discussed killing the family. The appellant left the house when Ake told him to go outside, turn the car around, and

appellant himself.

"listen for the sound." It is hard to imagine what other meaning the appellant could have attributed to "listen for the sound" were it not to denote the sound of gunfire.

Both the appellant's testimony at trial and Ake's confession indicated that the appellant tried to convince Ake not to kill the family before the appellant went out to the car. Additionally, both maintained that the appellant's weapon was unloaded throughout the ordeal.

It was the province of the trial court, sitting as trier of fact, to weigh the evidence, determine the facts, resolve conflicts and believe or disbelieve any witness' testimony. We see no reason to interfere with the trial court's judgment.

However, even if the appellant's assertions are true, we cannot say that he exonerated himself from guilt for acts committed in the desperate situation he and Ake conjointly created. According to 21 O.S. 1981, § 172,

> All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals.

Additionally, in *Jemison v. State,* 633 P.2d 753 (Okl.Cr.1981), we stated:

> The rule of law is well established that when a conspiracy is entered into to do an unlawful act, the conspirators are responsible for all that is said or done pursuant to the conspiracy by their coconspirators until the purpose has been fully accomplished. If two or more persons conspire or combine to commit a felony, each is criminally responsible for the acts of his associates and confederates in furtherance of the common design, if the criminal act thoroughly results from the common enterprise, or where the connection between them is reasonably apparent. *Fox v. State,* 524 P.2d 60 (Okl.Cr.1974). In *Fox,* citing from *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), we stated:
> 'Aiding, abetting, and counselling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in the criminal act, regardless of the existence of a conspiracy.' At 755–56.

Thus, the appellant, having together with Ake created a situation inherently dangerous to human life, cannot now disclaim responsibility for Ake's acts. See *Oxendine v. State,* 350 P.2d 606 (Okl.Cr.1960). The trial court correctly found the appellant guilty of all four charges.

## III. THE DEATH SENTENCES

 The trial court found the appellant guilty of the two counts of murder based on the felony murder rule as codified in 21 O.S.1981, § 701.7(B). Likewise, he found the appellant's culpability justifying the imposition of the death sentences based on the felony-murder doctrine. However, since that time, the Supreme Court addressed a similar issue in *Enmund v. Florida,* —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

Enmund was sentenced to death for his role in a robbery-murder. Enmund planned the robbery of two persons at their rural farmhouse. He sat in the get-away car approximately one-half (½) mile down the road from the victims' home while his two accomplices conducted the robbery. The murders were precipitated when one of the robbery victims, in response to her husband's cry for help, fired upon Enmund's accomplices with a rifle. Enmund's accomplices engaged in a gun battle with the two victims, which resulted in the death of both victims and the wounding of one of the accomplices.

In determining that Enmund's sentences of death were inconsistent with the Eighth and Fourteenth Amendments, the Supreme Court said,

> Enmund did not kill or intend to kill and thus his culpability is plainly different from that of the robbers who killed; yet the state treated them alike and attributed to Enmund the culpability of

those who killed the Kerseys. This was impermissible under Eighth Amendment.

\* \* \* \* \* \*

The focus must be on his culpability, not on that of those who committed the robbery and shot the victims, for we insist on 'individualized consideration as a constitutional requirement in imposing the death sentence,' *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (footnote omitted), which means that we must focus on 'relevant facets of the character and record of the individual offender.' *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). 102 S.Ct. at 3377.

We do not read *Enmund* to be an absolute ban on imposition of the death penalty on one who is convicted of first degree murder through the vehicle of the felony murder doctrine. Indeed, the Supreme Court further stated in *Enmund,*

> It would be very different if the likelihood of a killing in the course of a robbery were so substantial that one should share the blame for the killing if he somehow participated in the felony. 102 S.Ct. at 3378.

However, in light of *Enmund,* we deem it necessary for the sentencer to give greater attention to the evidence concerning the appellant Hatch's individual participation and intent in the events which culminated in the murder/shootings.[4]

Thus, we vacate the sentences of death and remand the cases to the Canadian County District Court for resentencing not inconsistent with *Enmund v. Florida,* supra, and this opinion. See, *Order Remanding Conviction to Trial Court, Eddings v. Oklahoma,* Case No. C–78–325 (February 23, 1982).

## IV. CONSTITUTIONALITY OF 21 O.S.1981, § 701.7 ET SEQ.

■ In his first assignment of error, the appellant argues the Oklahoma murder statutes are unconstitutional under Article 5, § 57 of the Oklahoma Constitution because of the manner of their enactment. Article 5, § 57, reads in pertinent part, "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title ..."

In *Ex Parte Lee,* 88 Okl.Cr. 386, 203 P.2d 720 (1949), this Court stated in the syllabus,

2. Where it is contended that a legislative act is in violation of the constitutional provision prohibiting statute from containing more than one subject (Section 57 Article 5 Okl.Const.) the objection should be grave and the conflict in the terms of the statute should be plain or palpable before the judiciary should destroy a legislative enactment. Where there is a doubt as to the constitutionality of the act, it should be sustained.

3. To constitute plurality of subject, an act must embrace two or more dissimilar and discordant subjects, so that by no fair intendment can they be considered as having any legitimate connection with or relation to each other.

4. A statute may include every matter germane, referable, auxiliary, incidental, or subsidiary to, and not inconsistent with, or foreign to, the general subject or object of the act.

5. The purpose of the constitution declaring that every act shall embrace but one subject, which shall be expressed in its title was not to hamper legislation but to check and prevent deception.

See also, *Jones v. State,* 542 P.2d 1316 (Okl. Cr.1975) at 1332.

An examination of the title of the bill enacting 21 O.S.1981, §§ 701.7 et seq., and its contents reveals that it addresses the crimes of first and second degree murder,

---

**4.** The majority in *Enmund* classifies Oklahoma as one of nine jurisdictions in which a vicarious felony murderer may be sentenced to death absent an intent to kill, if sufficient aggravating circumstances exist. Of course, as provided in 21 O.S.1981, § 701.11 the aggravating circum-

stances must outweigh the mitigating circumstances. Certainly the degree of participation in the entire chain of events may be presented in mitigation of the degree of punishment to be imposed. It is not, however, an absolute or conclusive mitigating factor.

punishments therefore, and certain procedures connected therewith. These contents are germane to the prohibition of and punishment for the crimes of murder. The statute, as enacted, satisfy the principles espoused in *Ex Parte Lee.* Title 21 O.S. 1981, § 701.7 presents no constitutional infirmity under Article 5, § 57.

The appellant would have us declare 21 O.S.1981, §§ 701.7(A) and 701.7(B) unconstitutional on two additional grounds.

■ According to the appellant's first theory, those who are convicted of Murder in the First Degree under Section 701.7(B),[5] may suffer the punishment of death with a lesser degree of intent being proven than those convicted under Section 701.7(A);[6] thereby unconstitutionally creating classes of defendants.

We see no equal protection problems in those statutes. There is nothing in our State or Federal constitutions to dictate what the definition of First Degree Murder shall be. Both 701.7(A) and 701.7(B) are rooted in the common law. Section 701.7(B), however, departs from the common-law felony murder doctrine to the extent that only the felonies enumerated in the statute may substitute for the malice aforethought element in a first-degree murder prosecution. These felonies are all crimes which, by their very commission, pose a threat to human life.

The legislature's definition of murder in 701.7(B) is a reflection of the policy that one who, by his wilfull criminal conduct, sets in motion a chain of events so perilous to the sanctity of human life that death

results therefrom; must bear the ultimate responsibility for his actions. We agree with the legislature that murders effected in such a manner are as abhorrent as those which are premeditated. Proscribing such actions under our first-degree murder statutes performs the rational function of deterring the commission of felonies so inherently dangerous as to create forseeable risks of death. We decline to hold that the Oklahoma murder statutes unconstitutionally elevate murder caused in the commission of the enumerated felonies to the status of first degree murder.[7]

■ Moreover, contrary to the appellant's second argument on the constitutionality of our death penalty statutes, the Oklahoma murder and capital sentencing statutes are procedurally sound under the doctrine of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

The procedural safeguards built into our capital punishment statutes ensure that the sentence of death is not imposed in an arbitrary and capricious manner. Title 21 O.S. 1981, §§ 701.10 through 701.12 ensure that each defendant is given intensive individual consideration before the sentencing decision may be made. Lastly, Section 701.13 requires this Court to scrutinize the record for error, passion, prejudice and other arbitrary factors; to ensure the evidence supports the sentence of death; and to determine whether the sentence is excessive or disproportionate. ·We find no constitutional shortfalls in the statutes.

## V. CONCLUSION

Lastly, the appellant's eleventh assignment of error is that the accumulation of

---

**5.** 21 O.S.1981, § 701.7(B) provides;
 A person also commits the crime of murder in the first degree when he takes the life of a *human being, regardless of malice, in the* commission of forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary or first degree arson.

**6.** 21 O.S.1981, § 701.7(A) provides;
 A person commits murder in the first degree when he unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a

human being, which is manifested by external circumstances capable of proof.

**7.** We would additionally note that the Oklahoma codification of the felony murder rule is by no means unique. According to the State's brief, 41 of our sister states have categorized as first degree murder the killing of a human being during the commission of a felony. (State's Brief 51–52). Thus, this fact amply satisfies the Supreme Court's concerns in *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), and the language of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) cited therein.

error which accrued throughout the trial dictates that the case be reversed. We have held numerous times that, if a defendant's assignments of error are found to be without merit, the argument which asks that they be considered collectively is likewise meritless. *Brinlee v. State,* 543 P.2d 744 (Okl.Cr.1975); *Haney v. State,* 503 P.2d 909 (Okl.Cr.1972). Thus, although we find that the sentences of death must be vacated and remanded for reconsideration, no error occurred, cumulative or otherwise, to justify further reversal or modification of the appellant's judgments and sentences.

CORNISH and BRETT, JJ., concur.