**Anthony James MANN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–84–217.**

Court of Criminal Appeals of Oklahoma.

Jan. 5, 1988.

Rehearing Denied Feb. 29, 1988.

Richard A. Williams, Anadarko, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Anthony James Mann, was convicted of Murder in the First Degree in Grady County District Court Case No. CRF–83–45. 21 O.S.1981, § 701.7. He was given the death penalty and he appeals.

The victim, Charles Keene, was abducted and murdered in the early morning hours of January 23, 1983. His body was weighted with a heavy chain, fastened to a cement block and dropped in the Washita River. He had multiple contusions, cuts, including a slit in his throat and a broken leg. The cause of death, however, was attributed to two gun shot wounds, one in the head and one in the chest. At the time of Keene's death, he was staying with his ex-wife, Vickie Keene, and their two young children. He was abducted from her home on the night of his death.

Four people were charged with the first degree malice aforethought murder of Keene; they were: William Wayne Thompson, Bobby Joe Glass, Richard Jones and appellant. Appellant was Keene's ex-wife's 27–year–old brother and Thompson was her 15–year–old half-brother. The other two defendants were friends of Mann and Thompson. The four defendants were tried separately; all of them were found guilty and given the death penalty. At the

time of this trial, Glass had been killed in prison.

The first witness called by the State was 15 year-old Thompson who was the self-proclaimed triggerman and planner in this case. It is from him that we get the story. Although divorced, Keene had been physically abusing his ex-wife, Vickie Keene. Mann and Thompson's plan on January 22, was to put a stop to the problem. Earlier that afternoon, Keene had chased appellant and Danny Mann, another brother, out of Vickie Keene's trailer house with a butcher knife. They had gone there with her to get her car. After this encounter, they went to see a deputy sheriff for help but were told nothing could be done. Tony Mann then gave his .45 caliber semi-automatic pistol, the murder weapon, to Vickie Keene so she could defend herself.

Thompson had heard about this episode from his mother and had seen the loaded gun on the kitchen cabinet at his mother's house. Glass, Jones, Mann and another man were sitting around on that Saturday evening drinking, smoking marijuana and taking valiums when Thompson asked appellant if he could join them; Mann agreed. During the evening, Mann, as the leader, hatched the plan to run Keene off by beating him up and putting him out on the highway with instructions not to come back. Thompson claimed that unknown to Mann, he and Glass put a cement block and chain in the trunk of the car and got the gun from the kitchen to take with them. Thompson said he and Glass intended at that time to murder Keene and dispose of the body by submerging it in the Washita River. This was the plan that was carried out.

Keene offered little resistance when they went to get him. Mann drove to the river with Glass and Thompson on either side of Keene in the back seat. Jones was passed out in the front seat. When they got to the river, Mann told Keene they were going to beat him up, he broke free and ran for the home of a Mr. and Mrs. Brown. A scuffle ensued and Thompson pulled out the gun. Keene, at 200 pounds, was substantially larger and stronger than Glass who was not large or Thompson who weighed only 115 pounds.

So as Thompson put it, "I was going to even up the size so I got that .45 and he grabbed it." The gun went off and was knocked out of Thompson's hand. We find from the Browns' testimony, the shot awakened them. Keene ran up on the porch and yelled for them to call the sheriff that "they" were trying to kill him. In addition to the gun, one of the men had a stick which was used to knock Keene out. The sheriff did not arrive before the badly beaten Keene was loaded unconscious in the trunk of the car and driven to the second location on the river. That is where the actual murder took place and the body was dumped. Thompson thinks Glass had the stick and that Keene's leg was not broken until later, although he is not sure when that occurred.

Thompson went on to testify that Mann tried to stop on the highway to let Keene out and at that point he pulled the gun on Mann and directed him where to go. Thompson claims he asked Mann to help with the murder but he refused and walked up the road until it was over. Thompson and Glass drug the unconscious Keene out of the trunk and down to the river. Keene then woke up and started beating on Glass. Glass was on the ground and it was then that Thompson shot Keene and Glass then grabbed the gun and also shot Keene. Then the two of them put the body in the river.

By Thompson's account of the events the last time Mann had any contact with Keene was at the Brown's house when Keene was unconscious. Contradicting testimony from other witnesses tells us that Keene, knowing he was going to be killed, asked Mann to take care of his children and that Mann retrieved some personal effects, a lighter and pocket knife, from Keene's body which he gave to his sister later. The implication is that these two events took place at the death scene contrary to Thompson's testimony. Thompson claimed, even though a shot had been fired at Brown's, that Mann did not know he was armed until he pulled the gun on him when

they were back on the highway headed for the second stop.

This was not the first time a member of Vickie Keene's family had shot Charles Keene. Several years earlier, a brother-in-law had shot him because he thought Keene was going to kill her child. No charges were filed at that time.

■ Appellant's first assignment of error is an objection to the admission of a color video tape recording of Keene's body being recovered from the river. The only objection made at trial was that the exhibit was more prejudicial than probative. On appeal, however, appellant is also claiming the state failed to lay a proper foundation for the introduction of this exhibit. Appellant's failure to object at trial, that the state had not established the admissibility of the exhibit before it was offered, is a waiver of this issue. 12 O.S.1981, § 2104(A).

■ Appellant admits the video tape is relevant, but claims it was superfluous and prejudicial and, therefore, should have been excluded. 12 O.S.1981, § 2403. We find this evidence was not unduly gruesome or repetitious, as appellant claims; and we agree it was relevant. Therefore, we find no error in allowing the jury to see the limited portion of the video tape that was admitted. *Thompson v. State,* 724 P.2d 780, 782 (Okl.Cr.1986).

■ Appellant's second proposition of error is an objection to the introduction of four color photographs. The same pictures were offered in evidence in appellant's brother's case. As we found in that case, two of the photo exhibits, numbers 10 and 11, should not have been admitted due to their gruesome nature. *Thompson,* 724 P.2d at 782, 783. Although these photos were taken at the same time and the subject is essentially the same as in the video tape, due to the sharper focus and closer range the result is two inordinately grisley pictures of the body. The pictures show the mud, blood, and slime from the river, the slit in the victim's throat and the entry wounds of the bullets in the chest and head. However, the case against appellant

was sufficient and we do not find this evidence affected the jury's verdict. *Thompson v. State,* 724 P.2d at 783. We do not find it was error to admit the other two photographs. Exhibit 9 showed the chain and block fastened to Keene's legs and was therefore more probative than prejudicial. Exhibit 8 was Keene's water logged belt which of course was not in the least gruesome. We find no error in the admission of this evidence.

In appellant's third proposition of error, he objects to the trial court's failure to instruct the jury on First Degree Manslaughter and Second Degree Murder. This contention is based on a claim that there was substantial evidence appellant was so intoxicated with drugs and liquor as to be incapable of forming the specific intent necessary to meet the first degree murder criteria. Appellant claims the court had an independent obligation to give instructions on these two theories even though appellant did not request them at trial. *Gibson v. State,* 501 P.2d 891, (Okl. Cr.1972). At trial, appellant's request for a heat-of-passion manslaughter instruction was denied, and it is not that issue that is now being questioned. This issue is based solely on a claim of diminished capacity due to intoxication.

Wayne Thompson's testimony was the only evidence offered to prove appellant was intoxicated on the night of the homicide. He did not estimate the volume of intoxicants taken or the time frame involved; he merely offered his opinion that appellant was drunk. The evidence shows Mann drove the car that evening around Chickasha, to and from Amber, a distance of 12 miles, and to two different locations on the Washita River, apparently without difficulty. According to Thompson, Mann said to him and Glass, "you all know it's Murder." Taking Thompson's testimony as accurate, Mann was not too drunk to know what was taking place.

■ Therefore, Thompson's testimony, taken as a whole, belies his claim Mann was intoxicated beyond a point which he could form the intent required to commit first degree murder. We find evidence of

first degree murder, and we find no evidence to warrant instructions on any lesser offenses or of the alternate offense of second degree murder. *See Franks v. Alford*, 820 F.2d 345 (10th Cir.1987). The jury was properly and adequately instructed. *See Seegars v. State*, 655 P.2d 563 (Okl.Cr. 1983); *Wilson v. State*, 649 P.2d 784 (Okl. Cr.1982); *Johnson v. State*, 632 P.2d 1231 (Okl.Cr.1981).

■ Appellant claims in proposition four that the Court prematurely excused one of the veniremen for cause. The juror in question, Juror Norman, admitted to knowing appellant's family very well, that he was well informed about the case, and that he had already formed an opinion as to the guilt or innocence of Mann. Neither the prosecutor nor defense counsel objected when the court excused this juror for cause. We find this issue was not preserved for review. *Nuckols v. State*, 690 P.2d 463, 468 (Okl.Cr.1984).

Propositions five, six and seven also deal with belated objections to voir dire. Appellant objects to the manner in which the court questioned the veniremen about assessing the death penalty. This objection is based on two types of complaints. First, appellant claims the Court did not make it clear to the veniremen that they had to answer the guilt/innocence question before they addressed the punishment question. Secondly, appellant claims the court's questions to the prospective jurors were suggestive, to-wit: "[I]f a person is convicted of murder in the first degree, punishment is either death or life imprisonment." The only authority cited by appellant in support of this objection is 12 O.S.1981, Ch. 2, App. Rule 6, which is a general description of voir dire and is not an aid to this court for finding in appellant's favor that error was committed. The merit to this objection escapes this court, as apparently it did the trial court and trial counsel.

■ In propositions six and seven, appellant is making similar semantical objections. He objects to the prosecutor's inquiry regarding an unrelated death case the prosecutor had tried earlier that involved residents of the venireman's small community. Appellant claims it was not clear that the instant case and that old case were wholly unrelated. The other objection was to the failure of the Court, *sua sponte*, to admonish a venireman when he said: "I've heard, you know, just that the murder took place." Appellant contends this layman's use of the term "murder" prejudiced the other prospective jurors. In none of the instances cited by appellant did trial counsel object, therefore, any error, real or imagined, was waived. *Nuckols*, 690 P.2d at 468.

■ In proposition eight, appellant claims the court erred in not treating Vicki Keene as an accomplice for procedural purposes. Vicki Keene was the victim's former wife and appellant's sister. The evidence showed that the victim's protracted abuse of Mrs. Keene was the reason he was killed. There was no evidence to establish Vicki Keene as an accomplice. 21 O.S.1981, § 172. It is pure conjecture to transform her into an accomplice merely because she was the person who, theoretically, would benefit the most from Keene's death and because she did not report his death when she learned of it. There was no evidence that she helped plan the murder, that she participated in it or that she witnessed it. Not being a co-conspirator or accomplice, her testimony did not need either corroboration or a limiting instruction. *Edmondson v. State*, 532 P.2d 81, 84 (Okl.Cr.1975).

In proposition nine, appellant claims prejudicial hearsay evidence was admitted over his objection. The testimony in question was given by Benny McCarthy. McCarthy saw Thompson, Glass and appellant at Dorothy Thompson's house, shortly after they came back from the river. Dorothy Thompson is appellant's mother. McCarthy was a witness to a conversation between Mann, Glass, Mrs. Thompson and Charlesetta Garcia (McCarthy's sister). They were discussing the murder and the need to conceal or dispose of evidence. According to McCarthy, Mann said they needed to return to the river in daylight to see if the body was visible from the bank, and to get rid of the gun. Later Sunday morn-

ing, Glass asked McCarthy to go with him and Vickie Keene to the river. It is the conversation between Glass and McCarthy on the way to the river that is the basis of the hearsay objection. At the time of trial, Glass had been killed in prison so he was unavailable to testify. *See* 12 O.S.1981, § 2804(A)(4).

■ The State claims McCarthy's testimony fits an exception to the hearsay rule and was, therefore, admissible. 12 O.S. 1981, § 2801(4)(b)(5). *See also United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). They contend that the trial court had already made the requisite independent finding a conspiracy existed; we agree. The conspirators were Mann, Thompson, Glass and Jones. The conspiracy started at the Thompson home on the evening of January 22 and continued to and through the kidnapping, beating, murder, concealment of the body, alteration of the crime scene during the daylight hours of the 23rd and the sale of the gun sometime later. The importance of this testimony was to both corroborate as well as impeach Thompson's testimony; Thompson claimed Mann participated in the kidnapping and beating but not in the murder. McCarthy testified to a version of the facts that Glass had related to him which inferentially contradicts Thompson's claim that Mann was not involved in the murder, but only the kidnapping and beating. We agree this case falls within the limits set out in 12 O.S.1981, § 2801(4)(b)(5). It was admissible testimony for McCarthy to relate the statements made either to him or in his presence by two of the co-conspirators during the continuation of the conspiracy. *See Burns v. State*, 8 Okl.Cr. 554, 129 P. 657, 663 (1913); *United States v. Gomez*, 810 F.2d 947, 950 (10th Cir.1987).

■ In proposition ten, appellant is again making a belated objection to the introduction of a photographic exhibit without a proper foundation. The exhibit is a picture of Malcolm "Opossum" Brown's front porch; no objection was made at trial, and there was nothing inflammatory about the picture. We find this issue was not preserved for review. 12 O.S.1981, § 2104.

■ In proposition number eleven, appellant claims he was the victim of an evidentiary harpoon and that the court overruled his objection to the offending testimony. The witness was one of the police officers who transported appellant from Eufaula where he was arrested back to Chickasha. Mann asked if they had made an arrest in another case, unquestionably unrelated to this case. Mann commented that it was "pretty bad them cutting her up like that...." The deputy replied, "you don't have much room to talk" and Mann replied, "I know, but it wasn't supposed to happen that way." The prosecutor's purpose in offering this statement was to show an admission of guilt by Mann. Appellant claims this testimony was susceptible of three different interpretations by the jury. He claims the jury might have thought appellant was involved in the other crime, or in another similar crime or that he was admitting he was guilty. From reading the transcript of the trial, we do not believe the jury would have thought Mann was in any way connected to the other case. This dialogue between the officer and Mann does not represent an evidentiary harpoon.

The officer was answering a direct question put to him by the prosecutor. *See McGowan v. State*, 662 P.2d 1389 (Okl.Cr. 1983). The evidence elicited by the prosecutor was not evidence of other crimes; it was probative of the facts in issue, and it was more probative than prejudicial. *Odum v. State*, 651 P.2d 703, 705 (Okl.Cr. 1982).

■ In proposition number twelve, appellant objects to testimony by Charlotte Mann, appellant's former wife. She related a conversation she heard after the murder where Wayne Thompson was telling his mother he had killed Keene. She also testified Mann told her immediately after the murder that Keene asked him to take care of his kids. These statements were consistent in part with Thompson's testimony. *See Lewis v. State*, 586 P.2d 81, 82 (Okl.Cr. 1978). Appellant did not object, therefore, this issue was not preserved for review.

*See Wilson v. State,* 554 P.2d 806, 809 (Okl.Cr.1976).

 In proposition thirteen, appellant is objecting to the introduction of an exhibit that was a vial of the victim's blood. He claims it was irrelevant and prejudicial. We find the exhibit was somewhat obscure but nonetheless harmless. Appellant's failure to object at trial was a waiver of this objection. 12 O.S.1981, § 2104.

 In propositions fourteen, fifteen, and sixteen, appellant is objecting to portions of the prosecutor's closing argument. Trial counsel did not see fit to enter contemporaneous objections to these three statements so we will consider them only for fundamental error. The prosecutor described Mann as a "corpse robber" which was a reference to Mann's removal of the knife and lighter from Keene's inert body. It was a poor, although accurate, choice of words. The second objectionable comment was a brief remark on the jury's role in law enforcement in general. The third reference was a comment by the prosecutor that Thompson's testimony in a prior trial was consistent with his testimony in this case. Appellant's guilt was strong enough to overcome any prejudice these three comments might have caused in a weaker case; we therefore find no error. *See Glass v. State,* 701 P.2d 765, 770 (Okl.Cr.1985).

In the second stage of the trial, in proposition seventeen, appellant objects to the introduction of two exhibits, No. 35 and 36. These exhibits were letters that were passed from appellant to Glass surreptitiously in the county jail while awaiting trial. Glass, of course, was deceased by the time of this trial, and Mann did not testify. The authenticity of the exhibits, i.e., the verification of the author, was provided by testimony from Mann's ex-wife, Charlotte, that the letters appeared to be in Mann's handwriting. Appellant claims the letters are other crime evidence, the other crime being perjury, and claims, therefore, that a *Burks* notice was necessary. *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979).

 At trial, appellant made two objections to those exhibits. The first one was an objection to the method chosen by the state to prove appellant was the author. The second was a claim that if they were admissible at all they should have been offered in the first stage, that they were irrelevant in the second stage, and due to the profanity in them they were prejudicial. There was no objection made that a *Burks* notice was not given. We do not find that *Burks* applies to the second stage of a death penalty case. It would be redundant to make such a requirement since the language of the sentencing statute provides for a similar type of notice, to-wit:

> Only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible ...

21 O.S.1981, § 701.10.

 Appellant was furnished with copies of the letters on November 28, 1983, which was three months prior to trial. On appeal, appellant did not advance the objections he made at trial, therefore, they will not be considered. We find no error in the admission of this evidence.

 In propositions eighteen and nineteen, appellant objects to the manner in which the prosecutor cross-examined appellant's eight character witnesses. The prosecutor asked each of them if they were aware of appellant's criminal record and went into some detail in that regard. Appellant was on notice his record would be used to prove he posed a continuing threat to society. 21 O.S.1981, § 701.12. His record consisted of a charge of second degree burglary in Beckham County and a Grady County charge of possession of marijuana. He received a deferred sentence and a suspended sentence, respectively, in those cases. An application was filed for revocation of the suspended sentence based on a claim appellant concealed stolen property, the property being a pistol. The state did not, although it would have been appropriate, introduce his record in the second stage; the first time it was used was in cross-examination of the character witnesses. *See* 12 O.S.1981, § 2405. It was relevant to question the witnesses to determine if their opinion of appellant took in consideration his criminal record. *Kennedy v.*

*State*, 640 P.2d 971, 981 (Okl.Cr.1982); *Boomershine v. State*, 634 P.2d 1318 (Okl. Cr.1981).

■ Appellant also claims the court erred in not instructing the jury that the questions were asked "to test the credibility of the character witnesses only, and not to prove that the defendant was a bad person...." Trial counsel did not request such an instruction, and appellant has cited no authority for the trial court to have given one *sua sponte*. This evidence was admissible on other grounds and not for the limited use appellant claims. *See Johnson v. State*, 665 P.2d 815, 822 (Okl.Cr. 1982). Likewise, we find no error in the form of the questions asked by the prosecution. The jury did not find appellant to be a continuing threat to society.

■ In proposition twenty, appellant is objecting to the prosecutor asking one of the character witnesses if he was "[a]ware of what Tony Mann and the three co-defendants did to Charles Keene—what they've been convicted of doing to Charles Keene and his body?" This objection is fortified by the trial court's granting of a motion in limine made by appellant at the commencement of trial prohibiting any reference to the conviction of the other three people charged with this murder. By the second stage of trial, the jury already knew there were three other people involved and since they had just found Mann guilty, it should not have been of any significance to them the other three had also been convicted. They were not told what penalty the other defendants were given. Had they been given that information this objection might have some merit. However, this line of inquiry ceased before any harm was done. Although, this evidence has little probative value, appellant has failed to show he suffered any prejudice from the admission of it. 12 O.S.1981, § 2403.

■ Propositions twenty-one and twenty-two deal with prosecutorial asides. Appellant recites some sixteen statements which he finds objectionable. Trial counsel also found them objectionable in most of those instances, and the court sustained his objections with admonishments to the jury.

We have reviewed these remarks and find the prosecutors came very close to causing an abortion of an otherwise fair trial with their insistence in ignoring the standards for what is proper closing argument. We do not, however, find reversible or modifiable error in the trial court's handling of this problem. *See Frazier v. State*, 607 P.2d 709, 711 (Okl.Cr.1980).

■ The other objectionable remark by the prosecutor was a partially completed definition of "reasonable doubt". Trial counsel immediately objected and that was the end of that attempt. We do not find it should have caused the jury any confusion and therefore we find no error in what transpired. *See Williams v. State*, 572 P.2d 257 (Okl.Cr.1977).

In propositions twenty-three, twenty-four and twenty-five, appellant contends the jury's verdict imposing the death sentence was not supportable by the evidence or in comparison to other similar cases. Appellant claims Charles Keene's death was not especially heinous, atrocious, or cruel. 21 O.S.1981, § 701.12. Although charged with a second aggravating circumstance, to-wit: "The existence or probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" the jury found only the one aggravating circumstance.

■ The facts of the case demonstrate Keene was undoubtedly subjected to extreme physical abuse, resulting in a great deal of pain and fright for an extended period of time before the fatal wounds were inflicted including being locked in the trunk of the car after the beating. *See Stouffer v. State*, 742 P.2d 562 (Okl.Cr. 1987) (opinion on rehearing). There was testimony that he knew when he was at the Brown's house that he would be killed. This was illustrated by his plea for help from the Brown's as well as his "death bed" request of appellant "[to] take care of his boys and to raise them right". We cannot find error in the jury's verdict that the aggravating circumstance outweighed any mitigating circumstances. *See Banks*

*v. State,* 701 P.2d 418 (Okl.Cr.1985); *Nuckols v. State,* 690 P.2d at 463.

We no longer have a mandate by statute or case law to do a review of this case and compare it to other cases where the death penalty was imposed. *See* 21 O.S.Supp. 1985, § 701.13; *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

■ By way of further argument, appellant cites in support of a claim the death penalty should not attach *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Hatch v. State,* 662 P.2d 1377, 1383 (Okl.Cr.1983) cert. denied, 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986). He contends this Court should, on a case by case basis, conduct a review at the sentencing stage of a defendant's intent and participation in a killing to determine if his Eighth and Fourteenth Amendment rights have been violated. *See also Tison v. Arizona,* — U.S. —, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). *Hatch* like *Enmund* and *Tison* was tried as a felony murder. In Oklahoma in a felony murder, the elements necessary for a guilty verdict do not provide for a finding of intent to kill, attempt to kill, kill or that lethal force be used. *Hatch,* 662 P.2d at 1383. Unlike felony murder, however, the absence of a finding of intent in a malice aforethought murder will defeat a conviction at the guilt stage in Oklahoma. *See* 21 O.S.1981, § 701.7(A). To apply the *Enmund* criteria and its progeny in a malice aforethought murder at the *sentencing* stage, would be the equivalent of asking the jury to re-examine their finding of guilt. An Oklahoma jury must accept that the intent to commit murder is an established fact when they reconvene for the sentencing stage in a malice aforethought murder. *See* 21 O.S. 1981, § 701.11. This of course assumes they were properly instructed, which was the case in Mann's trial.

In the remaining four propositions, appellant cites instances where judicial discretion was exercised and he finds fault with the outcome of the trial court's decisions. He claims these alleged abuses resulted in preventing him from having a fair trial. We find those claims have no merit.

■ In supplemental filings, appellant has presented six additional arguments with citations all of which have been addressed above, with the exception of a pro se "supplemental brief" that was filed by appellant contrary to the advice of appellate counsel. Ordinarily, this court will not consider, or even accept for filing, *pro se* offerings when an appellant is represented by counsel. 22 O.S.1981, ch. 18, App.— Rules of the Court of Criminal Appeals, Rule 3.4(E). However, appellant has attached a copy of his attorney's response to his request that an additional issue be included in his direct appeal. Appellate counsel erroneously advised appellant that the issue "be raised in an application for post-conviction relief." The law is well settled on the scope of a post-conviction relief review. 22 O.S.1981, § 1086. Issues that could have been raised on direct appeal and are not are presumed waived for post-conviction relief purposes. *Maines v. State,* 597 P.2d 774 (Okl.Cr.1979). In line with *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), this issue will be addressed at this time.

■ Appellant alleges that one of the jurors had an unauthorized communication with the bailiff outside the juryroom during deliberations. Appellant relates that "someone" heard a juror say: "I'm not going to change my mind, I just can't do it—I will not give the Death Penalty." This was called to the Judge's attention immediately and, under oath, he questioned the bailiff in the presence of appellant, his attorney and the prosecutor, and a record was made. The bailiff said she did not recall exactly what was said but thought the juror said "[m]aybe I need to talk to the Judge, because I'm not going to change my mind." The bailiff told her to tell the foreman. This is substantially different from the quote the unidentified person was supposed to have heard. However, in both instances there is no claim the bailiff responded to the juror in an inappropriate manner or that the other requirements of 22 O.S.1981, § 857 were not kept. This

took place in earshot of the jury near the door. This communication was unsolicited and fell within the bounds of what is permitted by way of communication with a bailiff under Section 857. Before there is a presumption of prejudice, which the state would have to rebut, it must first be established that an unauthorized communication took place. *Born v. State,* 397 P.2d 924, 935 (Okl.Cr.1964); *cert. denied,* 379 U.S. 1000, 85 S.Ct. 718, 13 L.Ed.2d 701 (1965). We do not find reversible error in the scenario related by appellant nor do we find the trial judge erred in the manner he handled the problem.

Therefore, this Court finds appellant was afforded a fair trial, and the jury verdict was not arbitrarily entered nor was it the by-product of passion or prejudice, being otherwise sufficient for a guilty verdict. *See Spuehler v. State,* 709 P.2d 202 (Okl. Cr.1985). The aggravating circumstance was supported by competent evidence. 21 O.S.Supp.1985, § 701.13(C). Therefore, the judgment and sentence is AFFIRMED.

BUSSEY, J., concurs.

PARKS, J., dissents.

PARKS, Judge, dissenting:

The instant case is the last in a series of three cases involving the murder of Charles Keene on January 23, 1983. Appellant, Wayne Thompson, Bobby Glass and Richard Jones, were each tried separately, convicted of first degree murder, and sentenced to death. Glass died in prison. This Court affirmed the judgment and sentence against Thompson. *Thompson v. State,* 724 P.2d 780 (Okla.Crim.App.1986). Jones' conviction was reversed and remanded for a new trial based on three errors: (1) improper admission of photographs, (2) improper admission of hearsay, and (3) prosecutorial misconduct. *Jones v. State,* 738 P.2d 525 (Okla.Crim.App.1987). In *Jones,* a majority of this Court concluded that the record evidence against Jones was not strong enough to overcome the errors. *Id.* at 531. Although the record evidence against appellant is arguably somewhat stronger than the record evidence was against Jones, it clearly does not rise to the

level of overwhelming evidence found in *Thompson, supra,* at 783, and I cannot say that the evidence of guilt was such as to overcome the errors present in this case.

The majority concedes at page four (4) that the trial court erred in admitting State Exhibits Nos. 10 and 11, consisting of gruesome photographs with little or no probative value, during the guilt-innocence stage. *Accord Jones, supra,* at 528; *Thompson, supra,* at 782–83. Concerning the admission of McCarthy's testimony concerning hearsay statements made by appellant and Glass after the death of the victim, it should be noted that appellant's trial occurred prior to our decision in *Laske v. State,* 694 P.2d 536, 538–39 (Okla.Crim. App.1985), and consequently the procedures enunciated in *Laske* were not followed in this case. Further, I cannot say that the trial judge's statement that "I do find that [a prima facie case of conspiracy] has been made" is sufficient to meet the foundational requirements of 12 O.S.1981, § 2801(4)(b)(5), and the procedures enunciated in *Laske.* A close review of the statements made by the prosecutors during first stage closing argument reveals that they improperly requested sympathy for the victim, engaged in derogatory name calling of the appellant, and improperly attacked defense counsel.

With regard to second stage closing argument, the majority concedes at page twelve (12) that "the prosecutors came very close to causing an abortion of an otherwise fair trial with their insistence in ignoring the standards for what is proper closing argument." I believe that the actions and comments of Prosecutors Larry Baresel and Tony Burns during second stage closing argument did not merely come close, but did deprive appellant of a fair trial during the second stage. Prosecutor Baresel dry fired the murder weapon, and commented that's "the last sound [Charles Keene] hears." Such comment was clearly improper, unprofessional, designed solely for its unfair prejudicial impact on the jury, and cannot be tolerated. *See Ford v. State,* 719 P.2d 457, 460 (Okla. Crim.App.1986). *Cf. Brewer v. State,* 650

P.2d 54, 57 (Okla.Crim.App.1982) (prosecutor's stabbing photograph of victim constituted misconduct). Prosecutor Burns requested sympathy for the victim on several occasions, made comments relating to societal alarm, and stated that the appellant had "fabricate[d] ... a defense ... through his little brother."

In light of the foregoing, it appears that the appellant may have been sentenced to death while the jury was "under the influence of passion, prejudice, or any other arbitrary factor." 21 O.S.Supp.1985, § 701.13(C)(1). As was so aptly stated by Judge Bussey in *Brewer v. State*, 650 P.2d 54, 57 (Okla.Crim.App.1982):

> Unfortunately, the appellant's right to a fair trial was the victim of an overzealous prosecutor. The record is replete with error committed during both stages of the trial, which when considered in a cumulative fashion, necessitates that the conviction be reversed and remanded for a new trial.

Based on all of the foregoing, I dissent to the affirmance of the appellant's judgment and sentence.